SAETA, J.
Concurring.—Under the compulsion of People v. Kaaienapua (1977) 70 Cal.App.3d 283 [138 Cal.Rptr. 651] I concur in affirming defendant’s conviction. Were I not bound by stare decisis, I *Supp. 11 would hold that the officers here violated defendant’s reasonable expectations of privacy by listening at his residence door. The record shows that the door to defendant’s apartment was locked (the officers kicked it in); the officers had to place their ears within two to three inches of the door to hear the conversations inside; and that defendant was talking in a normal tone. Under the Kaaienapua court’s reasoning these facts do not assist defendant in the defense of his privacy.
However, I discern a philosophical anomaly in contrasting the following passages from Kaaienapua and the leading case of Lorenzana v. Superior Court (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33]: “In the instant case, the manager of a boarding house had requested the assistance of the police in dealing with the illegal activities he felt appellant, one of his tenants, was conducting within the premises. With the manager’s express permission they entered into a vacant room wholly controlled by the manager and, consequently, were in a place where they had a right to be. (United States v. Fisch, 474 F.2d 1071, 1074.) As the court in Fisch determined, ‘Listening at the door to conversations in the next room is not a neighborly or nice thing to do. It is not genteel. But so conceding we do not forget that we are dealing here with the “competitive enterprise of ferreting out crime” ... the officers were in a room open to anyone who might care to rent. They were under no duty to warn... appellants... to speak softly, to put them on. notice that the officers were...listening.’” (Id., at p. 1077.)
“Equally apposite are our own observations in People v. Guerra, 21 Cal.App.3d 534, 538 [98 Cal.Rptr. 627]: ‘[I]f an individual desires that his speech remains private, he can easily assure himself of privacy by whispering, so that even a person in.. .[the officer’s] position cannot hear him. Since it does seem established by respectable authority that speech which is loud enough to be understood by anyone outside is not protected, it would seem rather arbitrary to draw a constitutional line somewhere between the whisper and the shout.’ (People v. Kaaienapua 70 Cal.App.3d, at p. 288.)”
“The fact that apertures existed in the window, so that an unlawfully intruding individual so motivated could spy into the residence, does not dispel the reasonableness of the occupants’ expectation of privacy. (See, e.g., People v. Cagle (1971) supra, 21 Cal.App.3d 57; Pate v. Municipal Court (1970) 11 Cal.App.3d 721 [89 Cal.Rptr. 893]; People v. Myles (1970) 6 Cal.App.3d 788 [86 Cal.Rptr. 274].) To the contrary, the facts of this case demonstrate that by drawing the window shade pe *Supp. 12 titioner Lorenzana exhibited a reasonable expectation to be free from surveillance conducted from a vantage point in the surrounding property not open to public or common use. Surely our state and federal Constitutions and the cases interpreting them foreclose a regression into an Orwellian society in which a citizen, in order to preserve a modicum of privacy, would be compelled to encase himself in a light-tight, air-proof box. The shadow of 1984 has fortunately not yet fallen upon us.” (Lorenzana v. Superior Court 9 Cal.3d at pp. 636-637.)
By sanctioning eavesdropping at locked doors of residences, we appear to be advancing rapidly into the shadow of 1984.