[No. H000965. Sixth Dist. Feb. 5, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDERICK JAMES LONG, Defendant and Appellant.

---

COUNSEL

Debra R. Huston, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver, Herbert F. Wilkinson and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**AGLIANO, P. J.—**

I

This case concerns the constitutional propriety of a police officer's direction that a lawfully detained criminal suspect produce identification. We determine that under the circumstances, the production of identification was lawfully required.

Defendant Frederick Long was convicted by his guilty plea of possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).) He now seeks reversal of the judgment, claiming erroneous denial of his motion to suppress

the evidence of his guilt. (Pen. Code, § 1538.5, subd. (m).) We affirm the judgment but remand for redetermination of presentence credits.

## II

### *The Facts*

On February 20, 1985, at about 10 p.m., veteran San Jose Police Officer Dennis Luca and trainee Brian Blackford were in uniform conducting a premises check of a bar. Officer Luca noticed defendant conversing with a young woman by a pool table. The woman appeared underage. Defendant was drinking beer. The girl was not seen drinking, but there was an empty cocktail glass near defendant's beer bottle.

Blackford contacted the girl to ask her age. Within a minute, Blackford signaled Luca to come over, because the woman indicated she was 19 years old. Defendant asked Luca why they were "hassling" his friend. Luca explained the law prohibited the presence of underage persons in the bar without a lawful purpose. Defendant told Officer Luca that he and the woman were together but he was the only one drinking. Officer Luca asked defendant to step outside where it was quieter. At that point, Luca considered that defendant was not free to leave.

Officer Luca suspected defendant had encouraged the girl's unlawful entry into and presence in the bar. The officer was also having difficulty in establishing the girl's identity. He asked defendant for identification. Defendant stated his name, but said he did not have any identification with him.

Luca noticed defendant's pupils were dilated and nonresponsive to light. There was a light odor of alcohol on his breath. His mouth was dry and there was a chalky powder at the corners of his mouth. Defendant had no difficulty articulating words, but his sentences were incomplete and his train of thought seemed derailed. He was more agitated than the average person during a police contact.

Officer Luca was trained to recognize symptoms of different types of drug intoxication. He had participated in over 200 arrests for possession of methamphetamine and observed people use it when he worked undercover. This training and experience led him to suspect defendant was under the influence of methamphetamine and he intended to arrest defendant for being under the influence of drugs in violation of Penal Code section 647, subdivision (f).

While defendant had denied having any identification on him, Officer Luca noticed a wallet-sized bulge in his rear pants pocket. He then asked

defendant for written identification. Defendant said he had none. The officer then directed defendant to look through his wallet, believing it must have contained identification.

Defendant pulled out his wallet to belt-line height but then turned to his left, ducking his right shoulder. Defendant's movement caused Officer Luca to be concerned defendant was concealing or destroying evidence or producing a razor blade. The officer had previously observed razor blades carried in wallets. Luca took defendant by the arm and turned him back so he could see what he was doing. Defendant asked why he was being hassled, and the officer again explained he was investigating the girl's presence in the bar, had to confirm defendant's identity, and it seemed inconceivable his wallet would not contain some identification. As Luca watched defendant thumb through the center of the wallet, he saw an address book, other papers, and several open, clear, plastic baggies or bindles he recognized as common methamphetamine packaging.

Defendant said nothing in the wallet would identify him. Officer Luca asked defendant to hand over the wallet. Luca found plastic baggies containing a white powder which proved to be methamphetamine. He also found identifying papers.

This discovery occurred within five minutes of exiting the bar. Defendant was then arrested for possession of methamphetamine and being under the influence of drugs.

## III

### Scope of Review

On appeal, we review the evidence in a light favorable to the trial court's ruling on the suppression motion. (*Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 10, fn. 7 [109 Cal.Rptr. 684, 513 P.2d 908]; *People* v. *Kaaienapua* (1977) 70 Cal.App.3d 283, 286 [138 Cal.Rptr. 651]; *People* v. *Varela* (1985) 172 Cal.App.3d 757, 759 [218 Cal.Rptr. 334].) We uphold those express or implicit findings of fact by the trial court which are supported by substantial evidence. (Cf. *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-598 [174 Cal.Rptr. 867, 629 P.2d 961]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Insofar as the evidence is uncontradicted, we do not engage in a substantial evidence review, but face pure questions of law. (Cf. *People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240]; *People* v. *Gee* (1982) 130 Cal.App.3d 174, 179 [181 Cal.Rptr. 524]; *People* v. *Flores* (1979) 100 Cal.App.3d 221, 228 [160 Cal.Rptr. 839], and cases there cited.) We must independently deter-

mine whether the facts support the court's legal conclusions. (*Leyba, supra,* 29 Cal.3d 591, 597-598; cf. *Aldridge, supra,* 35 Cal.3d at p. 477.)

■ The enactment of California Constitution article I, section 28, subdivision (d) (Prop. 8), on June 9, 1982, requires us to apply federal constitutional law to determine whether evidence should be excluded for offenses committed after that date. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-888, 896 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Lissauer* (1985) 169 Cal.App.3d 413, 417 [215 Cal.Rptr. 335]; *People* v. *Sanchez* (1985) 174 Cal.App.3d 343, 346-347 [220 Cal.Rptr. 53].)

IV

*The Propriety of Defendant's Detention*

The trial court found defendant was lawfully detained for investigation. ■ *People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436], states: "The law is well-established that 'in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. . . . The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. (*Terry* v. *Ohio* [1968] 392 U.S. [1], 22 . . . .)' (*In re Tony C.* [1978] 21 Cal.3d [888] at p. 893, fn. omitted [148 Cal.Rptr. 366, 582 P.2d 957]; see also *Reid* v. *Georgia* (1980) 448 U.S. 438, 440 . . . ; *Brown* v. *Texas* (1979) 443 U.S. 47, 51 [61 L.Ed.2d 357, 362, 99 S.Ct. 2637].)"

■ An investigative stop or detention may be justified by circumstances not amounting to probable cause to arrest (cf. *People* v. *Flores* (1974) 12 Cal.3d 85, 91 [115 Cal.Rptr. 225, 524 P.2d 353]; *Aldridge, supra,* 35 Cal.3d 473, 477), just as probable cause to arrest does not require proof of guilt beyond a reasonable doubt (cf. *People* v. *Ingle* (1960) 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577], cert. den. 364 U.S. 841 [5 L.Ed.2d 65, 81 S.Ct. 79]; *People* v. *Superior Court (Price)* (1982) 137 Cal.App.3d 90, 96 [186 Cal.Rptr. 734]). " '[T]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal —to "enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges. [Citation.]" '

(*In re Tony C., supra,* 21 Cal.3d, at p. 894 . . . .)" (*Leyba, supra,* 29 Cal.3d 591, 599.)

■ Here the officer encountered a possible violation of Business and Professions Code section 25665, which provides in part: "Any person under the age of 21 years who enters and remains in the licensed public premises without lawful business therein is guilty of a misdemeanor . . . ." "Lawful business" is something more than merely patronizing an establishment. (*Ballesteros* v. *Alcoholic Bev. etc. Appeals Board* (1965) 234 Cal.App.2d 694, 701-702 [64 Cal.Rptr. 633].)

Defendant was a possible principal in the crime. Penal Code section 31 states in part: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed." ■ Liability for aiding and abetting requires a person to aid or encourage the commission of a crime by act or advice with awareness of the perpetrator's purpose and with the intent of committing or at least facilitating the offense. (*People* v. *Beeman* (1984) 35 Cal.3d 547, 561 [199 Cal.Rptr. 60, 674 P.2d 1318].) Counseling the commission of a misdemeanor is itself a misdemeanor. (Pen. Code, § 659).

■ Defendant told the officer he and the girl were together. His protective attitude toward the girl suggested he had some familiarity with her. Defendant denied she had been drinking, implying an awareness she was underage. Defendant's manner made it reasonable to suspect he had arrived with the girl. These circumstances warranted further inquiry.

Outside the bar, the officer observed in defendant signs of drug intoxication. The detention thus became further justified on the reasonable suspicion defendant was in possession of methamphetamine.[1]

At the time of the incident, in February 1985, it was not a crime to be under the influence of methamphetamine[2] unless the person was so intoxicated as to be unable to care for his own safety or the safety of others. (Pen. Code, § 647, subd. (f).)[3] Defendant's intoxication does not appear to have

---

[1]Methamphetamine is a schedule II controlled substance. (Health & Saf. Code, § 11055, subd. (d)(2).)

[2] The Legislature has corrected this anomaly effective January 1, 1986, by amending Health and Safety Code section 11550 to make it a crime to be under the influence of methamphetamine. (Stats. 1985, ch. 1377, § 3.)

[3]Section 647, subdivision (f), provides: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: . . . (f) Who is found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, any

sufficiently endangered his safety or that of others, but we need not decide that question in light of the subsequent events.

It was a crime to be in possession of methamphetamine. (Health & Saf. Code, § 11377.) We consider it reasonable to suspect that a person under the influence of a drug may be in possession of it. (Cf. *People* v. *Brocks* (1981) 124 Cal.App.3d 959, 963 [177 Cal.Rptr. 730]—one in possession of a drug may have more of it concealed on his person.)

V

*Viewing the Contents of Defendant's Wallet*

Our specific concern in this case is with the constitutional propriety of the police officer's directive to defendant, a lawfully detained person, that he produce written identification. No federal or California case has directly resolved this issue to our knowledge.

The United States Supreme Court has stated, when there is a basis for detention, "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." (*Adams* v. *Williams* (1972) 407 U.S. 143, 146 [32 L.Ed.2d 612, 617, 92 S.Ct. 1921].) That case did not present an issue of identification, however. The court has subsequently left the question open. It was expressly reserved in *Brown* v. *Texas, supra,* 443 U.S. 47, where, in a footnote, Chief Justice Burger stated: "We need not decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements." (*Id.,* at p. 53, fn. 3 [61 L.Ed.2d at p. 363].)

The question was again reserved by the high court in *Kolender* v. *Lawson* (1983) 461 U.S. 352 [75 L.Ed.2d 903, 103 S.Ct. 1855]. *Kolender* dealt with California Penal Code section 647, subdivision (e), which, as construed, required that an individual provide "credible and reliable" identification when requested by a police officer who had reasonable suspicion of criminal

substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or any combination of any intoxicating liquor, drug, controlled substance, toluene, or any such poison, in such a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or any combination of any intoxicating liquor, drug, toluene, or any such poison, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way."

activity sufficient to justify a *Terry* detention. (*Id.,* at pp. 355-356 [75 L.Ed.2d at p. 908].) Faced with a number of contentions concerning the statute's validity, the Supreme Court held only that section 647, subdivision (e), "is unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." (*Id.,* at p. 361 [75 L.Ed.2d at p. 911].) The court left open the question whether such a law "implicates Fourth Amendment concerns." (*Id.,* at p. 361, fn. 10 [75 L.Ed.2d at p. 912].)

At oral argument, defendant's counsel pointed out the following passage in *Berkemer* v. *McCarty* (1984) 468 U.S. 420, 439-440 [82 L.Ed.2d 317, 334, 104 S.Ct. 3138]: "Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly [fn. omitted] in order to 'investigate the circumstances that provoke suspicion.' [Citation.] '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' [Citations.] Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him [fn. omitted], he must then be released."

We first note that the issue in *Berkemer* was whether *Miranda* admonishments were required prior to questioning of a driver who had been detained in a traffic stop. Placed in this context, we do not read the cited passage as precluding a demand for essentially neutral information such as identification, in contrast to the elicitation of incriminatory statements related to a suspected crime. In our view the essential question remains unanswered.

█ At the outset, we recognize there exists a reasonable expectation of privacy in the contents of one's wallet (cf. *United States* v. *Monclavo-Cruz* (9th Cir. 1981) 662 F.2d 1285, 1287; *People* v. *George* (1980) 110 Cal.App.3d 528, 533-534 [168 Cal.Rptr. 44]; see *New Jersey* v. *T.L.O.* (1985) 469 U.S. 325, 337-339 [83 L.Ed.2d 720, 732-733, 105 S.Ct. 733, 741-742]), including identifying information (see *Perkey* v. *Department of Motor Vehicles* (1986) 42 Cal.3d 185, 192-194 [228 Cal.Rptr. 169, 721 P.2d 50]).

█ The trial court found that the officer directed the production of identification, precluding any notion that the defendant acted voluntarily. Nevertheless, it was reasonable for the officer to require that defendant produce identification from his wallet. In *State* v. *Flynn* (1979) 92 Wis.2d 427 [285

N.W.2d 710, 718], cert. den. 449 U.S. 846 [66 L.Ed.2d 55, 101 S.Ct. 130]), the Wisconsin Supreme Court recognized a substantial governmental interest in obtaining the name of a person properly detained if the officer "is to be able to adequately perform his duty and conduct a proper investigation." (*Id.,* at p. 718.) In that case, a rifle had been stolen by a person fitting the description of defendant's companion. The companion identified himself upon the request of an officer, but defendant Flynn, although admitting he was carrying identification in his wallet, repeatedly refused to give his name or produce identification. The officer then frisked defendant and removed and examined his wallet, finding therein his identification. (*Id.,* at pp. 711, 712, 718-719.) The officer then learned that an order for defendant's arrest had been issued. Defendant was arrested whereupon he confessed to the commission of a burglary. Upon being charged with the burglary, defendant moved to suppress his statement and items of physical evidence discovered in the course of the investigatory stop.

Finding first that the investigatory stop of defendant was justified under *Terry* v. *Ohio, supra,* 392 U.S. at page 23 (*id.,* at p. 713) the Wisconsin Supreme Court confronted the issue whether the officers were justified in removing defendant's wallet from his pants pocket and searching it in order to determine his identity. The court reasoned: "To accept [the] contention that the officer can stop the suspect and request identification, but that the suspect can turn right around and refuse to provide it, would reduce the authority of the officer . . . recognized by the United States Supreme Court in *Adams* [*supra,* 407 U.S. 143], to identify a person lawfully stopped by him to a mere fiction. Unless the officer is given some recourse in the event his request for identification is refused, he will be forced to rely either upon the good will of the person he suspects or upon his own ability to simply bluff that person into thinking that he actually does have some recourse." (*Id.,* at pp. 717-718.)

*Flynn* determined that *Terry* v. *Ohio, supra,* 392 U.S. 1, was not the last word on what type of search was proper incident to an investigatory detention. (*Id.,* at p. 717.) The court concluded a limited search to find a suspect's identification was reasonable and constitutional if the suspect refused to identify himself while acknowledging he was carrying identification. (*Id.,* at pp. 717-720; see LaFave, Search and Seizure (1986 pocket supp.) § 9.4, subd. (g).)

The New Jersey Superior Court in *State* v. *Wilcox* (1981) 180 N.J.Super. 452 [435 A.2d 569, 571] followed *Flynn,* and held an identification search incident to a detention was proper when the officer disbelieved a detainee's oral identification and the detainee produced a false identification from his wallet.

 We reiterate, "[t]he scope of the detention must be carefully tailored to its underlying justification. . . . The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." (*Florida* v. *Royer* (1983) 460 U.S. 491, 500 [75 L.Ed.2d 229, 238, 103 S.Ct. 1319].)

 The voluntary display of identification is a routine experience for most of us. Measured against the obvious and substantial need for police recording the identity of a person suspected of having committed a crime, we find reasonable the minimal intrusion involved here in requiring the production of identification. In addition, defendant's oral statement of his name was suspect when he insisted he had no identification while appearing to carry a wallet and, in addition, he seemed intoxicated.

We need not go as far as *Flynn* did in justifying an officer reaching into a detainee's pocket to remove his wallet in order to examine it. It was a lesser intrusion to direct defendant to produce the identification himself. (See *Flynn, supra,* 285 N.W.2d 710, 719.)[4] It does not appear that Officer Luca intended to search through the contents of defendant's wallet but simply directed defendant to find and extract some identification. Defendant began to comply but suddenly turned to shield the wallet from the officer's view. Even assuming a further intrusion was involved when the officer then viewed the contents of the wallet (cf. *United States* v. *DiGiacomo* (10th Cir. 1978) 579 F.2d 1211, 1215; *United States* v. *Foust* (7th Cir. 1972) 461 F.2d 328, 330; *People* v. *McKelvy* (1972) 23 Cal.App.3d 1027, 1033-1034 [100 Cal.Rptr. 661]; see *People* v. *Mack* (1977) 66 Cal.App.3d 839, 848 [136 Cal.Rptr. 283]), we find this limited observation a necessary and reasonable measure to prevent either the destruction of evidence, or injury from a concealed weapon.

---

[4]The officer explained he might have confirmed identity without documents if the detainee orally provided a name, date of birth and last address, by a radio description based on (1) driver's license information or (2) any existing arrest record. (3) Without oral identification, he would have transported the detainee to the police station and searched him there. Alternatively, a field fingerprinting might have been conducted. While a detainee may not be transported to a police station for fingerprinting without probable cause or a warrant (*Hayes* v. *Florida* (1985) 470 U.S. 811, 816 [84 L.Ed.2d 705, 710, 105 S.Ct. 1643, 1647]), the United States Supreme Court has recently suggested in dictum that onsite fingerprinting incident to a detention would be reasonable "if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that [suspected] crime, and if the procedure is carried out with dispatch." (*Ibid.*)

Surely to require production of identification is no greater intrusion than these alternatives, and it could shorten the detention.

The law enforcement need to confirm identity also justified the officer's examination of the wallet's contents in defendant's hands. Nor was the officer required to accept the suspect's continued denial of possession of identification at this stage of the investigation. We also find reasonable the direction to hand over the wallet for the officer's personal inspection in order to locate identification. It was this inspection which turned up the methamphetamine.

We therefore determine that the trial court properly denied defendant's motion to suppress evidence.

## VI

### *Right to Good-time/Work-time Credits*

Defendant pled guilty and was sentenced on June 20. The negotiated plea was conditional on no time in state prison, and the court advised him "you can receive up to one year in the county jail and up to a $5,000 fine." The court suspended imposition of sentence and placed defendant on eight months of probation to terminate on the condition defendant serve eight months in jail. He also received credit for 58 days actually served.

Defendant complains on appeal he should have received not only the 58 days actual pretrial time served pursuant to Penal Code, section 2900.5, but also the good-time/work-time credits authorized by Penal Code, section 4019.

Respondent argues defendant waived this contention by accepting a plea agreement which did not specifically provide for good-time/work-time credit. Contrary to *People* v. *Zuniga* (1980) 108 Cal.App.3d 739, 742 [166 Cal.Rptr. 549] (and cases there cited) relied on by respondent, the record does not reflect any specific waiver of such credit. Contrary to *People* v. *McNight* (1985) 171 Cal.App.3d 620 [217 Cal.Rptr. 393], defendant is not attacking an aspect of the agreement for a guilty plea. The defendant there agreed to a prosecutorial recommendation of a certain sentence. The appellate court held a sentence in accord with that agreement related back to the guilty plea, requiring defendant procure a certificate of probable cause to challenge it. We cannot say, as did the court in *McNight, supra,* at page 625, defendant "agreed to accept a [specific] sentence in exchange for his guilty plea." Instead, our situation is that contemplated in footnote 4 in *McNight.* Where the court can select any appropriate sentence without violating the plea agreement, the sentencing proceedings do not relate back to the guilty plea and require a certificate of probable cause.

Penal Code section 2900.5, subdivision (a), provides in pertinent part: "[A]ll days of custody of the defendant, . . . including days credited to the

period of confinement pursuant to Section 4019, shall be credited upon his term of imprisonment, . . ." " '[T]erm of imprisonment' includes any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence, . . ." (Pen. Code, § 2900.5, subd. (c); see *People* v. *Riolo* (1983) 33 Cal.3d 223, 227 [188 Cal.Rptr. 371, 655 P.2d 723].) Defendant should have received good-time/work-time credits of up to 29 days against his imprisonment on probation. (*People* v. *Bookasta* (1982) 136 Cal.App.3d 296, 301 [186 Cal.Rptr. 193].) The actual credit to be received should be determined in the first instance by the County Jail authorities. (See *People* v. *Chew* (1985) 172 Cal.App.3d 45 [217 Cal.Rptr. 805].)

## VII

The judgment of conviction is affirmed, but the case is remanded to the superior court to amend its order suspending the imposition of sentence to allow for the appropriate good-time/work-time credits.

Brauer, J., and Capaccioli, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 23, 1987. Mosk, J., was of the opinion that the petition should be granted.