Filed 10/8/13  P. v. Price-Stewart CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EMMA PRICE-STEWART,<br><br>Defendant and Appellant. | A136332<br><br>(San Francisco City & County<br>Super. Ct. No. 12007830) |

## I.

## INTRODUCTION

Following the denial of a motion to suppress evidence (Pen. Code, § 1538.5)[1], appellant Emma Price-Stewart entered a guilty plea to possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)), and admitted one prior felony conviction (Health & Saf. Code, § 11351.5).  On appeal, Price-Stewart's sole contention is that the seizure of her purse during a police investigation was unconstitutional because there were no particularized facts showing that she was armed or dangerous.  As such, Price-Stewart argues the police officer's observation of the gun after the illegal seizure must be suppressed as tainted evidence.  We disagree and affirm.

---

[1] Section 1538.5 allows a defendant to move to suppress evidence obtained in an improper search and seizure.  (*People v. Williams* (1999) 20 Cal.4th 119, 125.)

1

## II.

### FACTUAL AND PROCEDURAL BACKGROUNDS

On the afternoon of March 21, 2012, San Francisco Police Officer Donald Lockett received a call regarding the attempted fraudulent use of a credit card at the Louis Vuitton store in the Westfield San Francisco Centre mall. Officer Lockett testified that upon his arrival, a store employee told him that one male and one female, both of whom were African-American, attempted to purchase over $4,000 worth of merchandise. The store employee told Office Lockett that she suspected that the male was going to use a fraudulent credit card because she recognized him from a bulletin regarding suspected fraud. The store employee then consulted her manager in the back of the store. When the employee returned to the counter, a manager from another Louis Vuitton store arrived, at which time the suspects immediately exited the store.

When the suspects left, San Francisco Police Officer Lee Dahlberg received a dispatch call concerning the credit card fraud. Officer Dahlberg was directed to street level outside the mall to await details of the suspects' location. As Officer Dahlberg was waiting, loss prevention officer Adam Ferla told Officer Dahlberg that the female suspect was heading towards Fifth and Market Streets. Looking in that direction, Officer Dahlberg observed a tall African-American female with red hair wearing a brown jacket. This exactly matched the description of the female suspect given in the dispatch call. Officer Dahlberg and another officer then detained the female suspect, later identified at the preliminary hearing as Emma Price-Stewart, appellant in the instant case.

When the officers began questioning Price-Stewart, she was "fidgety" and "flailing" about, moving her arms around "quite a bit" before she calmed down. She was carrying a large purse at the time of the detention. During the officers' questioning, Price-Stewart's purse was wide open. Officer Dahlberg testified that large purses can present safety problems because they can be swung against police officers, and that in his experience as a police officer, people have swung items including purses at officers. Therefore, due to Price-Stewart's fidgety motions and her large purse, Officer Dahlberg explained that he was "always concerned for weapons." Price-Stewart's rapid and quick

2

motions put Officer Dahlberg on edge, so he decided to take her purse and to hold it so it could not be used as a weapon.

When Officer Dahlberg told Price-Stewart that he would be holding her purse until the investigation was complete, she requested to have it zipped up because she did not want to lose anything. Officer Dahlberg agreed, allowing her to close her purse. Then, while Officer Dahlberg was holding the purse, he received information through his police radio that Price-Stewart needed to show a form of identification.

Upon being asked for her identification, Price-Stewart answered that it was in her purse. Officer Dahlberg allowed Price-Stewart to obtain her identification from inside the purse, but only while he was holding it. As Price-Stewart searched in her purse for her identification, Officer Dahlberg held the purse by two handles and spread it open. Officer Dahlberg testified that as Price-Stewart opened the purse, he was watching to see if there were any weapons that could be used against the police. While Price-Stewart was reaching for her wallet, Officer Dahlberg noticed a black nylon woven item at the bottom of the purse. He recognized it to be a gun holster, because it resembled the nylon gun holsters used in the police department. Officer Dahlberg became concerned that there was a gun in the holster.

Price-Stewart gave the identification to the officers, and wanted to put the wallet back in her purse. She unzipped the purse again, and this time Officer Dahlberg opened it a bit wider, observing the black nylon holster at the bottom of the purse, and the butt of a gun sticking out of the holster.

Then, Price-Stewart put the wallet back in her purse, which she zipped up one last time. After the background check on Price-Stewart was performed, her purse was placed in the trunk of police sergeant Lisa Frazer's car. At that time, Officer Dahlberg opened the purse and observed a handgun in a holster. He also discovered that the gun was loaded.

When the suppression motion was heard, Price-Stewart's counsel argued that the seizure of Price-Stewart's purse was unconstitutional because the police had no warrant, thus violating her reasonable expectation of privacy under the Fourth Amendment. The

3

prosecutor argued that the officers had probable cause to arrest appellant, and were justified in searching Price-Stewart's purse because it was large enough to hold a weapon. The prosecutor also stated that because the handgun was in plain view, the plain view doctrine justified the search and seizure of Price-Stewart's purse.

The court denied Price-Stewart's motion to suppress, finding that Officer Dahlberg had probable cause to take the weapon out of Price-Stewart's purse, because he initially saw the weapon during the valid investigation of Price-Stewart in connection with the fraudulent credit card charge. The court made a credibility determination to resolve the conflicting factual accounts given by Officer Dahlberg and Price-Stewart, finding that Officer Dahlberg observed all or part of the weapon when Price-Stewart was placing items back into her purse. The court found that Officer Dahlberg acted reasonably during the investigation, saw a weapon in plain view in Price-Stewart's purse, and thus, his actions did not violate the Fourth Amendment.

After the denial of her motion to suppress, the trial court accepted Price-Stewart's guilty plea to one count of violating Penal Code section 29800, subdivision (a)(1) (possession of a firearm by a felon), along with Price-Stewart's admission of one prior felony conviction (Health & Saf. Code, § 11351.5). On August 13, 2012, Price-Stewart was granted three years probation, with a condition requiring a six-day jail term with credit for time served. This timely appeal followed.

## III.
## DISCUSSION

### A. Standard of Review

In reviewing the ruling on a motion to suppress, the appellate court defers to the trial court's factual findings, whether express or implied, when supported by substantial evidence. (*People v. Hoyos* (2007) 41 Cal.4th 872, 891; *People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. James* (1977) 19 Cal.3d 99, 107.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*People v. James*, *supra*, at p. 107.) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise

4

our independent judgment.  (*People v. Hoyos*, *supra*, 41 Cal.4th at p. 891; *People v. Ramos* (2004) 34 Cal.4th 494, 505.)

## B. Denial of the Motion to Suppress

In her appeal of the trial court's motion to suppress, Price-Stewart does not challenge the legality of her initial stop or questioning.  Rather, she challenges only the seizure of her purse, arguing that Officer Dahlberg lacked legal grounds to take her purse in the first place.  Price-Stewart asserts that Officer Dahlberg's seizure of the purse was unconstitutional because it was not supported by a reasonable belief that appellant was armed or dangerous.  We disagree.

At the outset, we must note that the appellant mischaracterizes the *Terry* holding (*Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*)), stating that the standard for *protective seizures* require a court to find that officers have "reason to believe that the individual detained was presently armed and dangerous."  This reading is incorrect.  Rather, *Terry*'s two-part test requiring officers' reasonable suspicion that (1) criminal activity may be afoot, and (2) that persons be armed and dangerous, applies to warrantless *patdown searches*.  (*Id*. at p. 30.)  Indeed, the *Terry* court took care to note that, "We need not develop at length in this case, however, the limitations which the Fourth Amendment places upon a protective seizure and search for weapons.  These limitations will have to be developed in the concrete factual circumstances of individual cases."  (*Id*. at p. 29.)  Accordingly, this court must look to the specific facts in the instant case and independently adjudge whether Officer Dahlberg's protective seizure was reasonable given the totality of the circumstances.  We find that it was.

### 1. Officer Dahlberg's Actions Were Reasonable and Justifiable Under the Circumstances

This case centers on an important aspect of the landmark *Terry* ruling: the immediate interest of a police officer to take steps assuring that suspects with whom they are dealing are not armed with a weapon that could unexpectedly be used against the police.  (*Terry*, *supra*, 392 U.S. at p. 23.)  California courts have adhered to this principle, explaining that it would be unreasonable to require that police officers take unnecessary

risks in the performance of their duties.  (See, e.g., *People v. Collier* (2008) 166 Cal.App.4th 1374, citing *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 110; *People v. Ledesma* (2003) 106 Cal.App.4th 857, 867; *People v. Wilson* (1997) 59 Cal.App.4th 1053, 1061.)  A principle underlying the *Terry* decision is that law enforcement officers must be able to protect themselves and other prospective victims of violence, even in situations where they may lack probable cause for an arrest.  (*Terry*, *supra*, at p. 24.)  According to this principle, officers have the power "to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."  (*Ibid.*)

In this case, the initial seizure of Price-Stewart's purse was a necessary measure to neutralize the threat of physical harm.  First, Officer Dahlberg recognized Price-Stewart as exactly matching the physical description of the female suspect stated in the dispatch call.  While Price-Stewart was being questioned, she was "fidgety" and moving her arms about, while her large purse was wide open.  Large purses also could be carrying weapons that could be used against police officers.  Due to his concern for weapons, Officer Dahlberg took Price-Stewart's purse.  These facts clearly justified Officer Dahlberg's decision to take the purse and to hold it during the questioning.

Moreover, it was reasonable that, while holding Price-Stewart's purse, Officer Dahlberg would visually follow the movement of Price-Stewart's hands to ensure she would not use the purse as a weapon, or reach for a weapon inside.  In balancing the interest of officer safety against individual freedom from unreasonable searches, police officers are limited by a reasonableness test regarding their actions.  (*Terry*, *supra*, 392 U.S. at pp. 20-21.)  Central to the *Terry* court's understanding of reasonableness is the requirement that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  (*Id.* at p. 21, fn. omitted; *People v. Glaser* (1995) 11 Cal.4th 354, 363.)  This is a totality of the circumstances evaluation, in light of the officer's training and experience.  (*People v. Osborne* (2009) 175 Cal.App.4th 1052, 1058, citing *United States v. Cortez* (1981) 449 U.S. 411, 417-418.)  This interest in

6

officer safety continued through the investigation, including when Price-Stewart reached into her purse to obtain identification.

### 2. During the Investigation, the Gun Was in Plain View and Thus Admissible Evidence

During the valid stop and investigation, Price-Stewart's gun came into Officer Dahlberg's plain view. The "plain view" doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. (*Horton v. California* (1990) 496 U.S. 128, 135; see also *People v. Turner* (1994) 8 Cal.4th 137, 182 ["The observation and seizure of evidence in plain view from a position where the officer has a right to be is not constitutionally prohibited"].) To admit the warrantless seizure of incriminating evidence seen in plain view, there are two requirements. First, the incriminating character of the item in plain view must be "immediately apparent." (*Horton v. California*, *supra*, at p. 135.) Second, the officer must be lawfully located in a place from which the object can be plainly seen, and also have a lawful right of access to the object itself. (*Id.* at p. 137.)

As discussed above, it was not unlawful or unreasonable for Officer Dahlberg to hold the purse to neutralize the threat of physical harm. It also is reasonable for an officer to require that a defendant produce identification as part of a proper investigation. (*People v. Long* (1987) 189 Cal.App.3d 77, 86.) Officer Dahlberg was standing by Price-Stewart when she reached for her identification in her purse. Thus, Officer Dahlberg did not violate the Fourth Amendment to arrive at the vantage point from which the gun was plainly viewed. It was only when Price-Stewart reached for her identification that Officer Dahlberg observed what he believed to be a black nylon gun holster, and the butt of a gun.

Notably, Officer Dahlberg did not search Price-Stewart's purse, rather, he was merely keeping visual contact with her hands as she was reaching for her identification. The incriminating character of the gun in plain view was immediately apparent, as Officer Dahlberg was undergoing a valid investigation and had a lawful right to seize the gun, a dangerous weapon. Because the investigation itself was lawful, the holster and

7

butt of the gun were in plain view, and Officer Dahlberg had a right to seize the gun, the evidence of the gun in Price-Stewart's purse is admissible.

## IV.

## DISPOSITION

The judgment is affirmed.


                     _____
                     RUVOLO, P. J.


We concur:


_____
RIVERA, J.


_____
HUMES, J.