[No. B187453. Second Dist., Div. Six. Dec. 14, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS ACEVEDO GARCIA, Defendant and Appellant.

Counsel

Kenneth I. Clayman, Public Defender, and Michael C. McMahon, Chief Deputy Public Defender, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Ana R. Duarte and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

YEGAN, Acting P. J.— ▉ The celebrated case of *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], allows the police to perform a "patdown search" for weapons where there is reason to believe that the person is armed and dangerous. This rule cannot be "morphed" into a new rule to justify a search for ordinary evidence, here evidence of identification. We reverse. As we shall explain, nothing in either the letter or spirit of *Terry v Ohio, supra*, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] can be used as a springboard to justify a "patdown" search for identification.

Luis Acevedo Garcia appeals his conviction for, inter alia, possession of a controlled substance after his suppression motion was denied. This conviction stemmed from his encounter with Officer Smith of the Santa Paula Police Department on the evening of June 5, 2005. Appellant was riding a bicycle without an operative headlamp. Officer Smith lawfully detained him for violating Vehicle Code section 21201, subdivision (d). He asked appellant for identification. Appellant, who spoke limited English, said that he had no identification. On direct examination Officer Smith testified:

"Q. What did you do next?

"A. I attempted to search his person for identification in order to issue him a citation for the Vehicle Code violation.

"Q. And where did you start searching?

"A. I started to patrol down the exterior—well, prior to that when I grabbed him, he had pulled away from me and started saying probation in Spanish, which, excuse my accent, I don't have that good of a Spanish language accent, but it was 'probacion' and 'probacion,' and I had to use minimal force by putting the subject's arm in a control hold.

"Q. Okay. You indicated that you grabbed the defendant's arm. Why did you do that?

"A. In order to check his person for identification.

"Q. And you indicated that the defendant pulled away?

"A. Yes.

"Q. What did you do next?

"A. I used minimal force by grabbing a hold of his arm and placed him in what's commonly referred to a control hold just to gain control of him.

"Q. And what did you do next?

"A. He complied after I did that. He was placed in handcuff restraints for my safety just due to the fact that he started to pull away from me to avoid any further violent conflict with him.

"Q. Were you able to then search the defendant?

"A. Yes, I was.

"Q. What did you find?

"A. As I was searching him, I was doing a patdown on the exterior of his pants and inside of his right front pant pocket as I was patting it down with an open palm, I felt a bulge and it appeared like it was a crystal grain-type substance. Through my training and experience I knew the substance to be crystal methamphetamine.

"Q. Did you remove that particular bulge that you described—well, where on the defendant did you feel this particular bulge?

"A. In the right front pocket.

"Q. And at some point did you retrieve that item?

"A. Yes.

"Q. When you retrieved that item, what was it?

"A. It was a white crystal type substance, which, again, through my training and experience I believed it to be crystal methamphetamine."

■ In the trial court, the sole prosecutorial justification for the seizure of the controlled substance was a "patdown search for identification." In *People v. Dickey* (1994) 21 Cal.App.4th 952, 955–956 [27 Cal.Rptr.2d 44] we said as follows: "In *Terry v. Ohio*[, *supra*,] 392 U.S. [at p.] 27 [20 L.Ed2d 889, 909, 88 S.Ct. 1868], the United States Supreme Court held that a police officer who lacks probable cause to arrest could undertake a patdown search only '. . . where he has reason to believe that he is dealing with an armed and dangerous individual . . . .' 'The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' (*Id.*, at p. 29 [20 L.Ed.2d at p. 911].) The officer must be able to point to specific and articulable facts together with rational inferences therefrom which reasonably support a suspicion that the suspect is armed and dangerous. (*Id.*, at p. 20 [20 L.Ed.2d at p. 905]; see also *Sibron v. New York* (1968) 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889]; *Cunha v. Superior Court* (1970) 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704]; *People v. Collins* (1970) 1 Cal.3d 658, 663 [83 Cal.Rptr. 179, 463 P.2d 403].) Where, as here, there are no such specific and articulable facts presented, the patdown search cannot be upheld."

The People cite two California cases that consider the question presented here, i.e., *People v. Long* (1987) 189 Cal.App.3d 77 [234 Cal.Rptr. 271] and *People v. Loudermilk* (1987) 195 Cal.App.3d 996 [241 Cal.Rptr. 208]. Both are factually distinguishable and neither hold that an officer is permitted to perform a patdown search for identification. In *People v. Long*, the defendant was lawfully detained and asked for identification. He said he had none although the officer could plainly see that the defendant had a wallet in his back pocket. When the officer told him to look into his wallet for identification, the defendant did so by turning his back to the officer. This led the officer to believe that the defendant was possibly concealing evidence or attempting to produce a razor blade to harm the officer. The officer then turned the defendant around and watched him look through the wallet. Then he saw clear plastic baggies or bindles in the wallet. The *Long* court ruled that there was no constitutional violation saying that the observation of the defendant looking into his wallet was "a necessary and reasonable measure to

prevent either the destruction of evidence, or injury from a concealed weapon." (*People v. Long, supra*, 189 Cal.App.3d at p. 88.)

In *People v. Loudermilk*, the officers responded to a shots fired call, talked to the victim, and received a description of the suspect which included a description of the weapon used, a .22-caliber pistol. Other officers detained the defendant, did a patdown search for weapons, found none, but did notice that the defendant had a wallet. After the defendant said he had no identification, the officers removed his wallet and searched it for identification and apparently ascertained his name. The defendant brought a suppression motion arguing that the search of his wallet and the subsequent confession as to the shooting was the unlawful fruit thereof. The trial court ruled and the Court of Appeal agreed that the search and seizure of the wallet were reasonable. The Court of Appeal was quick to observe: "We must emphasize that we do *not* hold that a suspect may be detained and searched merely because he either refused to identify himself or refused to produce proof of identification. Nor do we hold that each time an officer conducts a *Terry* stop he may immediately conduct a search for identification. The rule we announce does not provide officers with unfettered discretion and does not open citizens to harassment. Our decision, allowing the officer to seize the wallet, is limited to the unique facts of this case, where defendant lied to the officer and himself created the confusion as to his own identity. The seizure of defendant's wallet was minimal and strictly limited to the legitimate inquiry into his identity. We conclude that the seizure of defendant's wallet was reasonable within the meaning of the Fourth Amendment." (*People v. Loudermilk, supra*, 195 Cal.App.3d at p. 1004.)

The Attorney General candidly acknowledges "[i]t does not appear that either the California or the United States Supreme Court has specifically decided the issue of whether a limited search of a person for identification following a detention is constitutional." The Attorney General cites two cases sanctioning such a patdown, *State v. Flynn* (1979) 92 Wis.2d 427 [285 N.W.2d 710] and *State v. Wilcox* (1981) 180 N.J.Super. 452 [435 A.2d 569] and two cases which disallow such a patdown, *State v. Biegel* (1990) 57 Wn.App. 192 [787 P.2d 577] and *State v. Webber* (1997) 141 N.H. 817 [694 A.2d 970].

We need not look to other jurisdictions to decide this case. We would have to indulge in legal legerdemain to justify a patdown search for identification. In fact, it would require a rewriting of *Terry v. Ohio, supra*, 392 U.S. 1, which we could not and would not undertake even if we were so inclined. Here, the record is devoid of any concern that appellant was armed and dangerous. The sole reason for the patdown was to gather evidence of identification.

A fair reading of *Terry v. Ohio*, and its reference to the lower court opinion in *State v. Terry* (1966) 5 Ohio App.2d 122 [214 N.E.2d 114], show that the "frisk" allowable upon a proper showing was " 'only a "frisk" for a dangerous weapon. It by no means authorizes a search for contraband, evidentiary material, or anything else in the absence of reasonable grounds to arrest. Such a search is controlled by requirements of the Fourth Amendment, and probable cause is essential.' " (*Terry v. Ohio, supra,* 392 U.S. at p. 16, fn. 12 [20 L.Ed.2d at p. 903, fn. 12].) Our own Supreme Court has unanimously so held. (*People v. Lawler* (1973) 9 Cal.3d 156, 161 [107 Cal.Rptr. 13, 507 P.2d 621] [patdown search "only" for weapons].) If stare decisis means anything (and it does) and if the word "only" means "only" (and it does), the trial court was required to grant this suppression motion as a matter of law. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ "It is commonly accepted that a 'search' is a governmental intrusion upon, or invasion of, a citizen's personal security in an area in which he has a reasonable expectation of privacy. [Citations.]" (*People v. Mayberry* (1982) 31 Cal.3d 335, 341 [182 Cal.Rptr. 617, 644 P.2d 810].) The word "search" " 'implies some exploratory investigation or an invasion and quest, a looking for or seeking out. . . . A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way.' [Citation.]" (*Bielicki v. Superior Court* (1962) 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288].) "And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search.' " (*Terry v. Ohio, supra,* 392 U.S. at p. 16 [20 L.Ed.2d at p. 903].) Here, Officer Smith searched appellant's person without probable cause to do so.

What should the officer have done? It is easy to sit in an ivory tower and criticize an officer's actions in the field without providing some constructive guidance for the future. Here, the officer's job was made more difficult because of the language barrier. He should have called for assistance from a Spanish-speaking officer, who we presume was available. The officers then could have questioned appellant and perhaps ascertained his identity without resorting to the use of force, handcuffs, and search. Depending on the answers received, probable cause for arrest may have developed. Or perhaps, the officers could have ascertained appellant's true name and written a citation. Perhaps appellant would have even consented to a search of his person if someone had asked him in Spanish. We will never know what could have happened. What we do know is this: There is no legal justification for a patdown search for identification.

The judgment is reversed. The trial court is directed to vacate its order denying suppression and to enter an order granting suppression.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied January 8, 2007.