Filed 9/13/13  In re S.P. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E055976 |
| Plaintiff and Respondent, | (Super.Ct.No. J23826) |
| v. | OPINION |
| S.P., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Thomas S. Garza, Judge.  Affirmed with directions.

David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

1

S.P., a minor, appeals after he was adjudicated a ward of the juvenile court for possession of metal knuckles. He contends that the juvenile court erred in denying his motion to suppress evidence under Penal Code section 1538.5. He further contends that, even if the adjudication was proper, two of the conditions of his probation are unconstitutionally vague and overbroad. We agree that one of the probation conditions should be modified to include a knowledge requirement. Otherwise, however, we affirm.

FACTS AND PROCEDURAL HISTORY

On March 14, 2011, Roy Rojas was a campus security officer assigned to San Gorgonio High School in San Bernardino. A park is located across the street on the east side of the school campus. On the day in question, at approximately 3:05 p.m., students were leaving the campus. Rojas saw two groups of students, both composed of Hispanic males, in the park across from the school. The two groups were comprised of San Gorgonio students, and numbered about 25 to 30 in all. Rojas was familiar with both groups, and knew from his day-to-day contacts with the students that the groups did not socialize together, and often engaged in fights. Rojas believed that a fight was brewing in the park, because the two groups were exchanging vulgarities and calling one another out to fight. Rojas and two other security officers attempted to disperse the groups, telling the young men to leave, and to "break it up."

Just then, a black car pulled up at the park. Six or seven young men, including the minor, were "packed" into the car. Rojas did not recognize these young men; they did not appear to be San Gorgonio students. After parking the car, the new arrivals got out of

2

their car and went to the trunk area. Rojas could not see exactly what the young men were doing, but they appeared to be reaching for something or looking at something in the trunk. Leaving the trunk open, the new arrivals began walking toward the area where the confrontation was taking place between the two groups of students. Rojas did not see anything visible in the hands of the newly arrived young men as they walked toward the fight.

Rojas believed that the new arrivals were going toward the fight with the intention of joining in. From his experience, Rojas knew that it was common for juveniles to call in friends or nonstudents to join in larger fights. He also heard "a couple of guys that were in that group were calling someone out." Rojas called for police assistance. The new arrivals were young men that he did not recognize, and they had gone to the back of their car by the trunk; Rojas feared that they were "attempting to go grab something in regards to the fight."

Officer Steven Nelson of the San Bernardino Unified School District responded to the call of a large group fight brewing in the park. He received radio information that another large group had arrived in a black car, had gone to the trunk of the car, and "were now clustered as a group and walking into the park towards where that existing group was . . . ." Officer Nelson was already nearby when he received the call, and he arrived within a few seconds. He saw the parked black car, and a group of six or seven young Hispanic males walking away from the car and advancing toward the large gathering of students in the park. Rojas pointed toward the group of six or seven young men heading

3

away from the car and into the park. Officer Nelson yelled after the young men to stop, and to come back to the sidewalk. The young men complied; they returned to the sidewalk and sat on the curb.

Officer Nelson directed Rojas to conduct a patdown search on the young men. He was concerned, "[i]nitially just based on sheer numbers. There was more of that group than there were security personnel or myself. [¶] In conjunction with my training and experience, it's not unusual when we have fights that occur after school that one or more individuals may have weapons on them, so for the safety of myself and the security personnel, as well as all the surrounding students that were in the immediate vicinity, I felt that [it] was necessary to conduct a pat-down [*sic*] of the exterior of their clothing to make sure they were not in possession of any obvious weapons."

Rojas patted down the minor, and felt the outline of metal knuckles in the minor's pocket. He handcuffed the minor and removed the metal knuckles from the minor's pocket.

A petition under Welfare and Institutions Code section 602 was filed, charging the minor with felony possession of metal knuckles (Pen. Code, § 12020, subd. (a)(1) [former Pen. Code, § 12020, repealed effective January 1, 2011, and replaced, without substantive change, by § 22210, made operative January 1, 2012].) In May 2011, the minor was placed on informal probation. (Welf. & Inst. Code, § 654.2.) Over the ensuing months, the minor had failed to comply with a number of the conditions of his probation; he missed appointments with his probation officer, he failed to complete his

4

community service, he did not attend required substance abuse and weapons diversion programs, and his attendance at school was poor. On February 6, 2012, the court revoked the minor's informal probation and reinstated the petition.

The court heard and denied the minor's motion to suppress evidence. The charge was amended to a misdemeanor, and the court entered an admission to that count. At the disposition hearing, the court declared the minor to be a ward of the juvenile court, and placed him on probation, in the custody of his mother.

The minor filed notices of appeal on March 28, and April 12, 2012.

## ANALYSIS

### I. The Trial Court Properly Denied the Motion to Suppress

Defendant first contends that the detention was unlawful because Officer Nelson had no reasonable suspicion that defendant was about to engage in criminal activity.

#### A. Standard of Review

In ruling on a motion to suppress evidence under Penal Code section 1538 .5, the trial court judges the credibility of witnesses, resolves conflicts in the testimony, weighs the evidence, and draws any factual inferences as necessary to its determination. (*People v. Leyba* (1981) 29 Cal.3d 591, 596.) On appeal, "all presumptions favor the exercise of [the trial court's] power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." (*Ibid.*) However, the appellate court also exercises its independent judgment to determine whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment. (*People v. Maury* (2003) 30 Cal.4th 342, 384.)

B.  The Detention Was Proper

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  (*Illinois v. Wardlow* (2000) 528 U.S. 119, 123 [120 S.Ct. 673, 145 L.Ed.2d 570].)  Here, Officer Nelson had a reasonable, articulable suspicion that criminal activity was afoot.

Rojas, one of the campus officers, saw the students leaving the school and entering the park.  Two groups of students, composed of young Hispanic men, appeared to be about to engage in a fight.  The groups were shouting challenges at one another.  Rojas knew that the groups of students were not friendly and did not "hang out together."  To all appearances, a large fight was brewing.

Just when the fight seemed imminent, another group of young men, including the minor, arrived in a black car.  The young men, who also appeared to be Hispanic, were "packed" into the car; six or seven got out of the car and clustered around the trunk.  In Rojas's experience, groups of students engaged in a fight would call in their friends or other nonstudents to join in larger fights.  Rojas could not see precisely what the young men were doing at the trunk, but none of the young men appeared to have anything in their hands when the group left the car.  The young men started walking in a group toward the area where the fight was coalescing.

Officer Nelson was already in the vicinity in his patrol car, and he could see the students gathering in the park at the time he received the radio information from Rojas, to

6

the effect that "a large group fight [was] pending in the park." He also heard Rojas's radio broadcast that an additional large group had arrived in a black car, had gone to the trunk of the car, and "were now clustered as a group and walking into the park towards where that existing group was . . . ." Because he was already close enough to see the park, Officer Nelson arrived within seconds of Rojas's radio call. He observed a group of six or seven Hispanic young men, who "appeared to be heading away from the car and towards the area of the large gathering in the park itself." Rojas also pointed to the group, indicating that they were the subjects of his radio broadcast. It was at this point that Officer Nelson called after the new arrivals to stop, and to return to the sidewalk area.

Officer Nelson could see the large fight developing in the park. The altercation appeared to be between two groups of Hispanic students. Immediately, the minor and his companions arrived, six or seven young men "packed" into the newly arrived black car. After stopping at the car's trunk, and appearing to reach for something inside, the young men walked in a group toward the altercation. Based on the totality of the circumstances, Officer Nelson had a reasonable, articulable suspicion that the minor and his companions were about to engage in criminal acts, i.e., to join the fight.

The minor protests that there were many recreational activities available in the park (e.g., skateboard course, basketball courts, baseball fields, soccer field, playground, picnic tables, restrooms), and that he and his companions might have gone to the park for any number of reasons. However, none of the young men were carrying anything visible

such as bats, racquets, skateboards, picnic coolers, basketballs, or anything else to indicate that they had any reason to be at the park, other than to participate in the fight. The timing of their arrival and apparent purposefulness in approaching the impending altercation were sufficiently reasonable, articulable circumstances to justify a brief detention. (See, e.g., *People v. Lindsey* (2007) 148 Cal.App.4th 1390, 1401 [Tip from 911 caller reported a shot fired in apartment complex, and described the shooter. The officer responded within minutes, and saw the defendant, matching the description of the shooter, and holding his waistband in a peculiar manner, as if a heavy object were concealed there. This was sufficiently reasonable suspicion, under the totality of the circumstances, to support a detention and patsearch of the defendant, i.e., that the defendant had been involved in criminal activity and was presently armed and dangerous.].)

C. The Patdown Search Was Proper

Law enforcement officers may conduct a patdown search incident to a detention only under certain conditions. An officer may conduct a patdown search to determine if a person is carrying a weapon after the officer observes suspicious behavior—prompting a reasonable suspicion—that the person is armed and dangerous to the officer or others. (*Terry v. Ohio* (1968) 392 U.S. 1, 24 [88 S.Ct. 1868; 20 L.Ed.2d 889] (*Terry*).) The officer's patdown search—the "frisk"—was " 'only a "frisk" for a dangerous weapon. It by no means authorizes a search for contraband, evidentiary material, or anything else in

the absence of reasonable grounds to arrest. Such a search is controlled by the requirements of the Fourth Amendment, and probable cause is essential.' " (*Terry, supra*, 392 U.S. 1, at p. 16, fn. 12 [20 L.Ed.2d at p. 903, fn. 12].) The California Supreme Court has also unanimously so held. (*People v. Lawler* (1973) 9 Cal.3d 156, 161 [patdown search "only" for weapons]; accord *People v. Garcia* (2006) 145 Cal.App.4th 782, 788.)

Here, Officer Nelson had good reason to suspect that one or more of the young men was armed and presented a physical danger to himself or others. Until backup arrived, he and the campus officers were outnumbered. The young men, including the minor, had spent time at the back of the car, appearing to reach for something in the trunk. Given their approach as a group to the brewing fight, as well as the lack of anything visible in their hands, it was reasonable to suspect that one or more of the young men had secreted a weapon on his person. The timing of their arrival and their calling out to others who appeared to be ready to fight justified the suspicion that they were armed. Under the totality of the circumstances, the safety of the officers, students in the area, and other bystanders was a genuine concern, justifying Officer Nelson's direction to have school officer Rojas pat the minor down for weapons. A reasonably prudent person in such circumstances would be warranted in the belief that the brief search was necessary for the safety of the officers and others. (*Terry*, *supra*, 392 U.S. 1, at p. 27.) The evidence discovered in the minor's pocket (a weapon, metal knuckles) was not the result of an unlawful search or seizure. The trial court properly denied the minor's motion to suppress the evidence.

9

## II. One of the Minor's Probation Conditions Should Be Modified to Include a Knowledge Requirement

The minor contends that two of his probation conditions, condition 2 and condition 14, are unconstitutionally vague and overbroad. Condition 2 required the minor to "Obey parents, responsible adults and the probation officer . . . ." Condition 14 mandated that the minor "Not possess any dangerous or deadly weapons, including but not limited to any knife, gun, or any part thereof, ammunition, blackjack, bicycle chain, dagger or any weapon or explosive substance or device as defined in Penal Code section 12020 and/or Penal Code section 626.10."

A juvenile court has broad discretion in selecting and imposing probation conditions for the purpose of rehabilitating a minor. (*In re Josh W.* (1997) 55 Cal.App.4th 1, 5.) Generally, in the absence of a manifest abuse of that discretion, the court's orders will not be disturbed on appeal. (*Ibid.*) However, the claim that a probation condition is unconstitutionally vague or overbroad presents a question of law, which the appellate court reviews independently. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888.) Because of the rehabilitative function of the juvenile court, a probation condition that might be improper or unconstitutional as to an adult, may nevertheless be permissible as to a ward of the court. (*Id.* at p. 889.)

Here, the juvenile court placed the minor in the custody of his mother, upon terms and conditions of probation, including the requirement that he "Obey parents, responsible

adults and the probation officer and cooperate in a plan of rehabilitation." The minor complains that the order that he "Obey . . . responsible adults . . . ," is impermissibly vague and overbroad, because it does not define the term "responsible." He contends that this term is not sufficiently narrowly tailored to protect his right to due process, i.e., notice of what is required to avoid violation. He also maintains that only "persistent disobedience" should constitute a violation of the probation condition.

We disagree. The term "responsible adult," when read in context, reasonably identifies those adults who are responsible in some way for the minor's care, guidance or supervision, such as a parent, guardian, custodian, probation officer, or teacher. Manifestly, the minor is not required to obey the directions of all persons over the age of 18. The term "responsible adult" reasonably limits the class of persons whom the minor must obey. The minor's suggestion that the probation condition should be modeled on Welfare and Institutions Code section 601 [persistent or habitual refusal to obey reasonable and proper orders of a parent, guardian or custodian is a basis to find a minor to be a ward of the court] is without merit. Persistent or habitual disobedience is one basis for imposing wardship; proof of persistent or habitual disobedience is therefore required to establish the jurisdiction of the juvenile court in the first instance. Once wardship has been established, however, the focus becomes the reform and rehabilitation of the minor. (See, e.g., *In re D.G.* (2010) 187 Cal.App.4th 47, 52.) The minor has already been adjudged a ward of the court; his history shows both law violations and past

violations of probation. His disobedience to persons exercising lawful control and supervision over him need not be repeated, persistent, or habitual to constitute a violation of his current probation. The minor does not have license to disobey his parents, teachers, or probation officer, so long as he does so only occasionally or once in a while. Probation condition 2 was not unconstitutionally vague or overbroad.

Probation condition 14 prohibited the minor from possessing dangerous or deadly weapons: the minor must "Not possess any dangerous or deadly weapons, including but not limited to any knife, gun, or any part thereof, ammunition, blackjack, bicycle chain, dagger or any weapon or explosive substance or device as defined in Penal Code section 12020 and/or Penal Code section 626.10."

The minor contends that this condition is unconstitutionally vague and overbroad in two distinct ways. First, he argues that the condition must be subject to a knowledge requirement, i.e., that he must not *knowingly* possess any dangerous or deadly weapons. Second, he claims the condition is overbroad because it "proscribes [his] possession of everyday items, such as a bicycle chain . . . , without narrowly tailoring the condition to require that he is only in violation if he intended to use the everyday item in an unlawful manner." He further maintains that, "it is beyond dispute that there is nothing improper about a boy owning and riding a bicycle."

As to the knowledge requirement, the minor is correct. The condition should be modified to require that the minor "Not *knowingly* possess any dangerous or deadly weapons . . . ." (*People v. Freitas* (2009) 179 Cal.App.4th 747, 751-752.) The People concede the point.

As to the prohibition of "everyday items," we begin by observing that a probation "condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.*, *supra*, 40 Cal.4th 875, 890.) The minor is generally correct that there is nothing improper in a boy owning or riding a bicycle, but, as the People point out, there is no constitutional right at stake in prohibiting a minor from possessing a bicycle chain. The probation condition is also reasonably tailored to the purpose of the condition. Here, the minor was found in possession of metal knuckles on his way to a fight. A bicycle chain may not be a dangerous or deadly weapon when it is a component of a functioning bicycle, but if it is removed from the bicycle, it certainly can be. The inclusion of a bicycle chain on the list of prohibited weapons is reasonable in light of the offense, and is neither overbroad nor vague. The minor does not suggest any other "everyday item" he finds objectionable, aside from a bicycle chain.

We shall order probation condition 14 modified to include a knowledge requirement, but otherwise affirm.

### DISPOSITION

The juvenile court properly denied the minor's motion to suppress evidence.

We direct that probation condition 14 be modified to read that the minor shall "Not knowingly possess any dangerous or deadly weapons, including but not limited to any knife, gun, or any part thereof, ammunition, blackjack, bicycle chain, dagger or any

weapon or explosive substance or device as defined in Penal Code section 12020 and/or

Penal Code section 626.10."

In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MCKINSTER
J.

We concur:


HOLLENHORST
Acting P. J.


MILLER
J.

14