Filed 1/23/14  P. v. Carter CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GREGORY CARTER,<br><br>        Defendant and Appellant. | A137085<br><br>(San Mateo County<br>Super. Ct. No. SC075506A) |

        Defendant Gregory Carter challenges the denial of his motion to suppress evidence.  He contends he was detained and frisked without cause, that a pat search exceeded the bounds of a legitimate *Terry*[1] stop, and that the detention was unlawfully prolonged.  We conclude the evidence defendant sought to suppress was the product of a legitimate *Terry* search, so we affirm.

## BACKGROUND

        The evidence is from the preliminary hearing, where defendant first brought his suppression motion.  Daly City Police Officer Korey Sprader was patrolling John Daly Boulevard near Mission Street around 1:12 a.m. on January 2, 2012.  It was a chilly night.  As Officer Sprader turned left onto Mission on a green light, he saw defendant walking across the intersection in "a dangerous fashion."  There was no crosswalk, and the officer explained that "the way he was crossing, if I hadn't been paying attention,  I could have hit him."

---

[1] *Terry* v. *Ohio* (1968) 392 U.S. 1, 21 (*Terry*).

1

Officer Sprader pulled up next to defendant, got out of his patrol car and asked defendant for his name and identification. Defendant said his name was Gregory Carter and that he did not have identification with him. He was wearing a sweatshirt with a leather jacket over it and two pairs of pants. After some further conversation, Sprader asked defendant for permission to search him. Defendant refused.

When his backup officer arrived about five minutes later, Officer Sprader proceeded to simultaneously search defendant for weapons and identification. He testified: "I was kind of doing a two-for-one just for safety reasons. For safety reasons and to do things systematically, I was kind of doing the pat search and that search [for identification] at the same time." The location was a high-crime area with heavy pedestrian traffic, "which means while you're standing outside your car with somebody it's more dangerous for you if other people are around." There had been several violent crimes in the area, including a homicide the previous year, and Sprader had conducted numerous investigations involving the intersection.

Officer Sprader positioned himself behind defendant and had defendant place his hands behind his back. Beginning with defendant's shoulders and working down, he frisked defendant for weapons while he also searched defendant's pockets for identification. Within "minutes" of starting his search, Sprader reached into defendant's jacket pocket and retrieved a San Francisco Police Department booking sheet bearing defendant's picture, name, birth date and contact information. He then stopped looking for identification, but continued to frisk defendant for weapons and found a loaded revolver tucked into defendant's waistband.

Defendant was arrested and charged with possession of a firearm by a felon, carrying a concealed firearm, and carrying a loaded firearm in public. It is undisputed that defendant was arrested because of the gun and not for jaywalking.

Defendant moved to suppress all evidence obtained from the search at the preliminary hearing. The magistrate determined that Officer Sprader found the gun while

2

conducting a lawful pat search for officer safety purposes, and denied the motion. After unsuccessfully renewing his suppression motion before the trial court, defendant entered a no contest plea to possession of a firearm by a felon and admitted various priors. The court dismissed the remaining counts and granted defendant's motion to dismiss a prior "strike" allegation under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. The court suspended imposition of sentence and placed defendant on three years' probation subject to conditions including nine months in a residential drug treatment program. This appeal timely followed.

## DISCUSSION

### I. *Standard of Review*

Where, as here, a motion to suppress is submitted to the superior court on the preliminary hearing transcript, "the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness." (*People v. Thompson* (1990) 221 Cal.App.3d 923, 940.) We independently review the applicable law and its application to the facts (*People v. Carter* (2005) 36 Cal.4th 1114, 1140) and affirm the trial court's ruling if correct under any legal theory. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

### II. *Officer Sprader Conducted A Valid Protective Pat Search*

Defendant contends Officer Sprader lacked sufficient cause to detain him for jaywalking or frisk him for weapons during the detention. He further contends the officer's search of his pockets exceeded the bounds of a valid *Terry* search. Although the officer lacked probable cause to search defendant's pocket for identification (*People v. Garcia* (2006) 145 Cal.App.4th 782, 788), the evidence supports the magistrate's finding that that the gun was discovered during the course of a lawful protective search.

3

" '[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.' [Citation.] ' "Although police officers may not arrest or search a suspect without probable cause and an exception to the warrant requirement, they may temporarily detain a suspect based only on a 'reasonable suspicion' that the suspect has committed or is about to commit a crime. [Citations.] Such detentions are permitted, notwithstanding the Fourth Amendment's requirements of probable cause and a search warrant, because they are 'limited intrusions' that are 'justified by special law enforcement interests.' " ' " (*In re H.M.* (2008) 167 Cal.App.4th 136, 142.) "An ordinary traffic stop is treated as an investigatory detention, i.e., a '*Terry* stop.' [Citation.] A *Terry* stop is justified if it is based on at least reasonable suspicion that the individual has violated the Vehicle Code or some other law." (*Ibid*.)

Defendant asserts Officer Sprader lacked an adequate basis for the detention because the evidence was insufficient to establish that he crossed between adjacent intersections in violation of Vehicle Code section 21955 or failed to yield the right of way to nearby vehicles in violation of Vehicle Code section 21954, subdivision (a).[2] But at the preliminary hearing defendant conceded both the jaywalking violation and the validity of his initial detention. So, he forfeited his challenge to the detention and cannot raise it in this appeal. (*People v. Williams* (1999) 20 Cal.4th 119, 136.)

This is a close case, but we conclude that Officer Sprader had sufficient cause to frisk defendant for weapons. "[A]n officer has the authority to conduct a reasonable search for weapons where that officer has reason to believe a suspect is armed and

---

[2] Vehicle Code section 21955 provides that "Between adjacent intersections controlled by traffic control signal devices or by police officers, pedestrians shall not cross the roadway at any place except in a crosswalk. Under section 21954, subdivision (a), "Every pedestrian upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway so near as to constitute an immediate hazard."

4

dangerous, regardless of whether he has probable cause to arrest the individual for a crime. [Citation.] Further, the officer need not be absolutely certain that the individual is armed; the crux of the issue is whether a reasonably prudent person in the totality of the circumstances would be warranted in the belief that his or her safety was in danger." (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1074, citing *Terry, supra*, 392 U.S. at p. 27.) Here, Officer Sprader testified that he frisked defendant in part out of concern for his safety. He explained he believed a safety search was warranted because the detention occurred in an area known for violent crime, including a fairly recent murder. The area was heavily trafficked by pedestrians, which heightened the danger to the officer from others who might be in the area. Defendant was wearing bulky clothing and he was unable to produce identification. While none of these factors alone would lead us to conclude Officer Sprader reasonably believed he was in danger, the totality of the circumstances support his concern. Sprader was consequently justified in conducting a patdown search for weapons.

On the other hand, defendant is correct that the search of his pocket for identification could not be justified by concerns for officer safety. "A fair reading of *Terry v. Ohio*, and its reference to the lower court opinion . . . show that the 'frisk' allowable upon a proper showing was ' "only a 'frisk' for a dangerous weapon. It by no means authorizes a search for contraband, evidentiary material, or anything else in the absence of reasonable grounds to arrest. Such a search is controlled by requirements of the Fourth Amendment, and probable cause is essential." ' [Citation.] Our own Supreme Court has unanimously so held. [Citation.]" (*People v. Garcia*, *supra*, 145 Cal.App.4th at p. 788; *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1237.)

But Officer Sprader's improper search for identification does not invalidate the evidence revealed by his simultaneous frisk for weapons. Officer Sprader began frisking defendant for weapons before he located the booking slip, and, as defendant acknowledges, there is no evidence that finding the booking slip influenced his

continuation of the weapons search. Nor does the record indicate that defendant's detention was unduly prolonged by the improper search for identification.

We conclude Officer Sprader discovered the firearm during a valid officer safety search. We therefore do not reach the Attorney General's contention that Sprader conducted a constitutional search incident to defendant's arrest on gun charges because the officer had probable cause to arrest him for jaywalking when he initiated the search. (See *Rawlings v. Kentucky (*1980) 448 U.S. 98; but see *Knowles v. Iowa* (1998) 525 U.S. 113; *Sibron v. New York* (1968) 392 U.S. 40, 63 ["It is axiomatic that an incident search may not precede an arrest and serve as part of its justification"].)

**DISPOSITION**

The judgment is affirmed.


_____
Siggins, J.


We concur:


_____
McGuiness, P.J.


_____
Jenkins, J.