Filed 3/23/15  P. v. Perez CA3

<u>**NOT TO BE PUBLISHED**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C075627 |
| Plaintiff and Respondent, | (Super. Ct. No. P13CRF0197) |
| v. | |
| CRYSTAL JEANETTE PEREZ, | |
| Defendant and Appellant. | |

Following an unsuccessful Penal Code section 1538.5 motion to suppress evidence essential to her conviction, defendant Crystal Jeanette Perez pleaded no contest to possession of heroin (Health & Saf. Code, § 11350, subd. (a)) and possession of drug paraphernalia (Health & Saf. Code, § 11364.1, subd. (a)).  On appeal, she claims the trial court erred in denying her motion to suppress evidence because the search of her person following a traffic stop was unreasonable.  The People argue it was proper to deny the suppression motion because the search was reasonable based on officer safety concerns and defendant's consent, and because discovery of contraband in defendant's pocket was

1

inevitable. We conclude the patdown search was reasonable based on the totality of circumstances and that defendant consented to the search of her pockets. Therefore, we shall affirm the judgment.

## FACTUAL BACKGROUND

Because the sole issue on appeal is the denial of the motion to suppress, we summarize the facts as adduced at that hearing.

On February 25, 2013, at approximately 12:05 a.m., Sheriff's Deputy Adam Stockeland, who had more than 10 years of experience as a police officer, was on a regular patrol of the parking garage at the Red Hawk Casino. Narcotics and alcohol are commonly consumed in the garage before, during, and after casino patrons enter and exit the casino. There are pedestrian entrances to the casino on each floor of the garage, and at the relevant time there was a consistent flow of foot traffic to and from the casino.

Deputy Stockeland noticed a car traveling approximately 25 miles per hour, which he considered excessive speed given the number of pedestrians passing through the vehicle traffic path, the restrictive driving area, and the small parking spaces. Out of his concern for pedestrians and other drivers, Stockeland began following the car in a parallel path through the garage. As they reached the far end of the garage, Stockeland made a left hand turn, and the car turned in front of Stockeland without observing cross-traffic, cutting Stockeland off and forcing him to brake to avoid hitting the car. Stockeland followed the car and activated his spotlight, causing the car to stop about five feet from the entrance to the casino.

Once the car stopped, the driver and passenger (defendant) both got out in "an accelerated fashion" and walked towards Deputy Stockeland's patrol car. Stockeland directed them to stop, and defendant asked why in a manner Stockeland described as "excited a little bit, mild" but not necessarily aggressive. Stockeland patted down the

2

driver. Before he began patting down defendant, she told the driver she loved him and to call someone. Stockeland understood this comment to indicate that defendant was feeling guilty and may have contraband on her person. Stockeland justified the patdown of defendant based on her bulky loose-fitting sweatshirt, which in his experience may be worn to conceal weapons.

As Deputy Stockeland began patting down defendant's exterior clothing, he asked where her identification was. She pointed with her head toward the right side of her body and said it was in her right front pants pocket. Stockeland reached into her right pants pocket, where he felt a number of personal items but not her identification. He pulled out a few of the items, including 10 oval-shaped pills wrapped in plastic and a small plastic baggie containing what he suspected to be marijuana. Defendant did not have a medical marijuana card. Stockeland again asked defendant where her identification was, and this time she gestured her head to the left and said it was in her left front pants pocket. There, Stockeland found a clear blue plastic baggie and a pink container containing a black tarry substance he observed to be heroin.

Deputy Stockeland placed the driver in the back of his patrol car, and asked a since-arrived deputy to watch defendant. Stockeland walked to the passenger side of the vehicle, and through the window he saw a methamphetamine pipe and three syringes, two of which were filled with a black substance, on the passenger side floorboard. Defendant admitted the syringes and pipe were hers.

The trial court denied defendant's motion to suppress evidence. It found there was reasonable cause to stop the vehicle and to contact defendant, and that defendant had "injected herself" into the situation by getting out of the car and approaching Deputy Stockeland. The trial court also found that once Stockeland had found the marijuana and pills in defendant's right pants pocket, the continued searches of defendant's person and the car were not problematic. The crux of the case, from the trial court's perspective, was

whether the deputy had cause to initiate the patdown search of defendant.  Though the court considered Stockeland's testimony inarticulate, it found he had expressed an officer safety concern warranting a patdown search based on the totality of the circumstances, e.g., the time of night, the location, the deputy's solo status, that the driver and defendant approached him, and that defendant was wearing bulky clothing that may be used to conceal weapons.  The trial court also found that by defendant's informing Stockeland her identification was in her right, then her left pants pocket, instead of providing it to him, she "tacit[ly] invit[ed]" him to reach into both of her pockets.

## DISCUSSION

Challenges to the admissibility of evidence obtained by a search or seizure are evaluated under federal constitutional standards.  (*People v. Schmitz* (2012) 55 Cal.4th 909, 916.)  The Fourth Amendment to the United States Constitution protects an individual's right to be secure in his or her person against unreasonable searches and seizures.  (*Terry v. Ohio* (1968) 392 U.S. 1, 8-9 [20 L.Ed.2d 898] (*Terry*).)  The central inquiry under the Fourth Amendment is the reasonableness under all of the circumstances of the particular governmental invasion of a defendant's personal security.  (*Terry*, *supra*, at p. 19.)  A defendant may move to suppress evidence obtained as the result of an unreasonable search or seizure.  (Pen. Code, § 1538.5, subd. (a)(1)(A).)

In reviewing the trial court's denial of a suppression motion, we consider the record in the light most favorable to the trial court's disposition and defer to the trial court's factual findings, if supported by substantial evidence.  (*People v. Tully* (2012) 54 Cal.4th 952, 979.)  Any conflicts in the evidence are resolved in favor of the trial court's order.  (*People v. Limon* (1993) 17 Cal.App.4th 524, 529.)  If " ' "the evidence is uncontradicted, we do not engage in a substantial evidence review, but face pure questions of law." ' " (*Ibid*.)  We exercise our independent judgment to determine whether, on the facts found, the search or seizure was reasonable under the Fourth

Amendment. (*Tully*, *supra*, at p. 979.) And we will affirm the trial court's ruling if correct on any theory of applicable law, even if for reasons different than those given by the trial court. (*People v. Evans* (2011) 200 Cal.App.4th 735, 742; *People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.)

## I. Reasonableness of Patdown Search

Defendant contends Deputy Stockeland's patsearch of defendant was not reasonable. Under *Terry*, Stockeland could subject defendant to a patsearch for weapons only if there were specific and articulable facts which, taken together with rational inferences from those facts, would lead a reasonably prudent person in the same circumstances to believe that defendant may be armed and dangerous. (*Arizona v. Johnson* (2009) 555 U.S. 323, 326-327 [172 L.Ed.2d 694, 700]; *Ybarra v. Illinois* (1979) 444 U.S. 85, 92-94 [62 L.Ed.2d 238, 246-247]; *People v. Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 206; see *People v. Sandoval* (2008) 163 Cal.App.4th 205, 212-213; *People v. Dickey* (1994) 21 Cal.App.4th 952, 956 (*Dickey*).) We do not view the facts and inferences in isolation or taken separately from each other, rather we review the totality of the circumstances to determine the reasonableness of the search. (*United States v. Arvizu* (2002) 534 U.S. 266, 273-275 [151 L.Ed.2d 740].) In considering the totality of the circumstances, we must give due weight to the factual inferences drawn by law enforcement. (*Ibid.*; see *Dickey*, *supra*, 21 Cal.App.4th at p. 957.)

Nonetheless, the sole justification for a *Terry* search is to discover weapons or instruments that may be used to assault a police officer. (*Adams v. Williams* (1972) 407 U.S. 143, 146 [32 L.Ed.2d 612, 617].) And, a nonspecific suspicion the detainee potentially may have been armed cannot support an officer's patdown search. (*Dickey*, *supra*, 21 Cal.App.4th at p. 956.) However, where there is a reasonable suspicion illegal drugs are in a car, an officer may be justified in conducting a patdown search of the car's occupants for officer safety reasons in the absence of facts allaying those concerns.

5

(*People v. Collier* (2008) 166 Cal.App.4th 1374, 1377-1378.) This is premised, at least in part, on the commonly accepted notion that " 'guns often accompany drugs.' " (*Id.* at p. 1378, quoting *U.S. v. Sakyi* (4th Cir. 1998) 160 F.3d 164, 169; accord, *People v. Osborne* (2009) 175 Cal.App.4th 1052, 1060.)

Here, Deputy Stockeland stopped the car defendant was riding in as a passenger at 12:05 a.m. in a parking garage that is reputed to be used for the consumption of narcotics; the driver of the vehicle was driving at an excessive speed and nearly collided with Stockeland's patrol car; instead of waiting in the car for the solo deputy to approach them, defendant and the driver rapidly exited their vehicle and approached the deputy; defendant was wearing baggy clothing that the deputy knew could be worn to conceal weapons; and before he began his search of defendant, she told the driver she loved him and to call someone, which Stockeland understood to be indicative that she was carrying contraband of some kind. Based on the totality of circumstances, we conclude it was reasonable for Stockeland to conduct a patdown search of defendant for officer safety reasons.

## II. Consent to Search Pockets

Defendant also contends that the search of her pockets was unlawful because her "consent" was not voluntarily given in light of the unlawful patsearch. Defendant is correct that if the initial patdown search of defendant was unlawful, her consent to have Deputy Stockeland reach into her pockets to find her identification would likely also be invalid. (See *People v. Henderson* (1990) 220 Cal.App.3d 1632, 1651 [noting consent that is the product of unlawful police conduct is invalid unless there is a showing of attenuation]; accord, *People v. Valenzuela* (1994) 28 Cal.App.4th 817, 833 ["it is axiomatic that a consent to search produced by an illegal arrest or detention is not voluntary"].) She is also correct that an officer may not conduct a patdown search in order to locate a person's identification. (*People v. Garcia* (2006) 145 Cal.App.4th 782,

788.) However, here, in light of the totality of circumstances, we have found the patdown search was supported by a reasonable suspicion that defendant may have been carrying a weapon. Therefore, we address whether defendant voluntarily consented to Stockeland's search of her pockets for her identification.

Consent is a question of fact to be determined in light of all of the circumstances. (*People v. James* (1977) 19 Cal.3d 99, 107.) Thus, "[w]hether consent was voluntarily given or was in submission to an express or implied assertion of authority is a question of fact." (*People v. Robinson* (1974) 41 Cal.App.3d 658, 668.) "Where there is substantial evidence supporting the conclusion that consent to search was given voluntarily, an implied finding to this effect implicit in the order admitting the evidence pursuant to such consent, is binding on appeal. [Citations.] Where evidence on the issue of the voluntary nature of the consent conflicts, the finding of the lower court that the consent was voluntary . . . must be upheld." (*Id.* at pp. 668-669.) Here, the trial court found defendant not only consented to have Deputy Stockeland search her pockets for her identification, but that she tacitly invited him to do so. We conclude the evidence presented—that defendant's verbal and gestural direction to her right and then left pocket when Stockeland asked where her identification was—meets the test of substantiality to support a finding of voluntary consent. Therefore, the search of her pockets was not unlawful.

### III. Inevitable Discovery

The People, for the first time on appeal, contend discovery of the contraband on defendant's person was "inevitable" because Deputy Stockeland would have searched her once he saw the heroin and methamphetamine pipe on the passenger floorboard in plain view. Under the inevitable discovery doctrine, illegally seized evidence may be used if it would have been discovered by the police through lawful means. (*People v. Robles* (2000) 23 Cal.4th 789, 800.) Defendant contends the argument is waived (forfeited)

7

because it was not raised below and the factual basis for the argument is not fully set forth in the record.  We need not decide the issue because we have concluded Stockeland's search of defendant's person was reasonable.  Nonetheless, we note this is not an ideal record on which to make such a contention:  Stockeland searched defendant before ever looking in the car and, absent Stockeland's discovery of drugs on defendant's person, he would have no reason to look closely at the interior of the car, let alone "inevitably" arrest and search its passenger (defendant).

## DISPOSITION

    The judgment is affirmed.


                                             BUTZ          , J.



We concur:



     BLEASE       , Acting P. J.



     DUARTE      , J.