In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3804

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROMELL R. LEWIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cr-00255-RTR-1—**Rudolph T. Randa**, *Judge.*

ARGUED APRIL 20, 2010—DECIDED JUNE 14, 2010

Before FLAUM, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Believing that they had obtained his consent, two Milwaukee police detectives entered the apartment of the defendant, Romell Lewis (actually, as we'll explain later, it was his girlfriend's apartment), and seized a short-barreled shotgun from a bedroom. Lewis was arrested and charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of a short-

barreled shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5871.

Lewis filed a motion to suppress the weapon. After a hearing, Magistrate Judge Aaron E. Goodstein issued a detailed report recommending that Lewis's motion be denied, which the district judge summarily adopted. Lewis entered a conditional guilty plea to the second count and was later sentenced to a term of 46 months. He now appeals, arguing that his motion to suppress was improperly denied because the detectives never obtained his consent to enter the apartment or the bedroom. The government, on the other hand, asserts that the district judge (or rather, the magistrate judge) correctly concluded that Lewis voluntarily consented in both instances.

On July 9, 2008, Richard Lucas, a private security guard, telephoned Milwaukee police detective Michael Crivello about a problem at an apartment complex in the city. Lucas said that he received complaints that a black male had fired gunshots from the window of an apartment in that complex and that drugs were being sold there. Lucas also stated that the man was not supposed to be living in the apartment because it was federally subsidized housing, *see* 42 U.S.C. § 1437f, and leased only to the man's girlfriend. Lucas, concerned for his safety, requested that the police accompany him when he followed up on an earlier violation notice regarding the illegal guest.

Three days later, Crivello and his partner, Christopher Ederesinghe, went with Lucas to the apartment. The

detectives were in plain clothes but wore their police identification around their necks, badges on their waists, and guns on their hips. Ederesinghe later testified that they intended to conduct a "knock and talk"—that is, have a consensual, information-gathering encounter—as there was no exigency or probable cause for a warrant. Lucas knocked on the door as Crivello and Ederesinghe stood behind him. A man inside the apartment asked, "Who is it?" to which Lucas replied, "Lucas" and stated his intention to serve a notice. The man told Lucas to wait a minute. At some point, there was movement inside the apartment followed by a thud, indicative of a heavy object hitting the floor.

A few seconds later, Lewis answered the door, clad only in loose-fitting boxer shorts. Lucas asked, "Can we come in" or "Can I come in" so as not to "put [Lewis's] business out in the hallway?" Lewis said, "Come in" or "Step in" and backed up. At this time, the detectives identified themselves as law enforcement and said that they were with Lucas. Inside the apartment, there was an adolescent male, known to Lucas as "DooDoo," on the floor of the living room. After performing a pat-down search of Lewis, Ederesinghe asked Lewis and DooDoo to sit down in the nearby kitchen, placing his hand on Lewis's elbow and directing him to a table and chairs.

One of the detectives asked Lewis for identification. Lewis replied that his identification was on a speaker in the bedroom. Crivello, in Lewis's line of sight, went to retrieve the identification. Upon opening the door

and entering the bedroom, Crivello saw a short-barreled shotgun under the bed next to the speaker. Crivello returned from the bedroom and said that Lewis was a "c-one," meaning that he should be arrested. Lewis was arrested, and the gun was seized. All of these events took place within a minute of the detectives' entry into the apartment.

In his motion to suppress, Lewis argued that he never voluntarily consented to the detectives' entry into the apartment or the bedroom and that the detectives were not permitted to seize the gun. The government disputed those arguments and also questioned Lewis's standing to object to the officers' entry into the apartment. The magistrate judge found that: (1) Lewis had standing to challenge the search because he was an overnight guest; (2) Lewis voluntarily consented to the detectives' entry into the apartment; (3) Lewis voluntarily consented to Crivello's entry into the bedroom; and (4) the detectives were permitted to seize the gun once the bedroom had been accessed.

Lewis objected to the magistrate judge's report, arguing for the first time that he had been illegally seized at the time he purportedly consented to Crivello's entry into the bedroom. The government contended that the argument had been waived, that there was no seizure, and that, even if Lewis had been seized, it was a lawful detention based on reasonable suspicion. Rather than address these and other arguments, however, the district judge adopted the magistrate judge's recommendation "*in toto*," saying only that "[r]eview of all of

the facts indicates to the Court that law enforcement had Constitutional permission to enter the premises and seize the weapon in question."[1]

When considering a motion to suppress, we review legal questions *de novo* and findings of fact and credibility determinations for clear error. *United States v. Wesela*, 223 F.3d 656, 660 (7th Cir. 2000). A factual finding is clearly erroneous if we are "left with the definite and firm conviction that a mistake has been made." *United States v. Gravens*, 129 F.3d 974, 978 (7th Cir. 1997). Given the fact-specific nature of a motion to suppress, "we give special deference to the . . . court that heard the testimony and observed the witnesses at the suppression hearing." *Id.*

To repeat, the issue here is whether Lewis voluntarily consented to the detectives' entry into the apartment and the bedroom. A warrantless search without exigent circumstances is presumptively unreasonable and generally requires suppression of the evidence obtained from the search. *United States v. McGraw*, 571 F.3d 624, 628 (7th Cir. 2009). An exception to this rule is the defendant's voluntary consent to the search. *Id.* The existence of voluntary consent is a question of fact to be

---

[1] At oral argument, we inquired about the frequency of this particular procedural posture—that is, where the district judge adopts the magistrate judge's recommendation without any independent analysis. Unfortunately, we were informed that it has become the rule, rather than the exception, in that district.

determined based on the totality of the circumstances. *United States v. Figueroa-Espana*, 511 F.3d 696, 704 (7th Cir. 2007).

Magistrate Judge Goodstein found that Lewis voluntarily consented to the detectives' entry into the apartment. We find no clear error here. From Lewis's position at the door, the detectives and their identification were visible. Lewis was also informed that they were police officers and were accompanying Lucas. In response to Lucas's request to enter, Lewis backed away and said to step in. Importantly, there was no evidence that Lewis ever objected to the entry of the two detectives. All of these facts support the magistrate judge's determination. *See, e.g.*, *United States v. DiModica*, 468 F.3d 495, 499 (7th Cir. 2006) (finding consent where the defendant failed to object to entry); *United States v. Walls*, 225 F.3d 858, 863 (7th Cir. 2000) (stating that consent need not be verbal and finding consent where the defendant stepped back to allow officers to enter).

Lewis's primary argument is that his consent was invalid because Lucas, and not the detectives, engaged him and asked for permission to enter the apartment. But Lewis points to nothing in the case law that *requires* an explicit, verbal exchange between the police and the defendant as a predicate to a finding of consent. *Cf. Wesela*, 223 F.3d at 661 ("The fact that there was no direct verbal exchange between [the police] and [the defendant's wife] in which she explicitly said "it's o.k. with me for you to search the apartment," is immaterial, as the events indicate her implicit consent."). It is true that

Lucas led Lewis to believe that he was there about a tenancy issue. But there is no evidence suggesting that this was a ruse; Lucas was at the apartment to follow up on the violation notice. He asked the police to accompany him for his safety because gunshots had been fired from the apartment a few days earlier. And the facts remain that, after he opened the door, Lewis could clearly see that the two other men were police officers, the men identified themselves as such and said they were with Lucas, and Lewis, after being given an opportunity to do so, did not object to entry. Accordingly, Lewis's consent was valid.

The magistrate judge also found that Lewis voluntarily consented to Officer Crivello's entry into the bedroom. Again, we find no clear error. When asked for his identification, Lewis immediately replied that it was on a speaker in the bedroom. He did not say, "Yes" or "I don't have it with me" or "I'll go get it," which would not have implied consent to enter the bedroom. And although Crivello was in Lewis's line of sight, there was no evidence that Lewis ever objected to the entry or that any coercion was used. We are troubled, however, by the fact that all these events happened so quickly and that the detectives never asked for clarification from Lewis regarding his somewhat ambiguous response. But we are not "left with the definite and firm conviction that a mistake has been made" by the magistrate judge in finding consent.

Lewis's primary argument on this issue is that any consent he gave was invalid because he was illegally

seized at the time. *See Florida v. Royer*, 460 U.S. 491, 507-08 (1983).[2] A seizure occurs when a reasonable person in the position of the defendant would believe that his liberty has been restrained. *United States v. Thompson*, 106 F.3d 794, 798 (7th Cir. 1997). At the time of Lewis's purported consent, he had been asked to sit at the kitchen table while the detectives and Lucas stood behind him. On these facts, a straight-faced argument could be made that Lewis was not seized. But because the government chose not to develop this argument on appeal, it is waived. *United States v. Knox*, 573 F.3d 441, 450 (7th Cir. 2009). Rather, the government contends that the seizure amounted to a lawful stop under *Terry v. Ohio*, 392 U.S. 1, 30 (1968). *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975) (extending *Terry* to situations other than a stop-and-frisk for weapons). To make such a stop, the detectives needed reasonable suspicion that Lewis was engaged in criminal activity. *Id.* at 81-82.

Here, although the detectives admittedly did not possess probable cause, they did have reasonable suspicion that criminal activity might be close at hand. Lucas had received complaints that a black male was illegally inhabiting the apartment and had fired shots a

---

[2] As we previously discussed, Lewis first raised this argument in his objections to the magistrate judge's report. Accordingly, in its response to Lewis's objections, the government claimed that the argument had been waived. The government does not, however, repeat that assertion on appeal.

few days earlier. Shortly after knocking on the apartment door, there was movement inside the apartment followed by a thud, indicative of a heavy object hitting the floor. When Lewis came to the door, his appearance supported the conclusion that he was the illegal inhabitant who had discharged the firearm, which was likely still in the apartment. Considering all these facts together, the limited detention of Lewis at the kitchen table was justified. Lewis's consent to Officer Crivello's entry into the bedroom was therefore valid.

For all these reasons, the judgment of the district court is AFFIRMED.