Filed 3/25/16  P. v. Fannon CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>RONNIE MICHAEL FANNON,<br><br>     Defendant and Appellant. | F070189<br><br>(Super. Ct. No. 1466191)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, William K. Kim and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*          Before Gomes, Acting P.J., Kane, J. and Smith, J.

After denial of his motion to suppress evidence of methamphetamine found during a search of his person (Pen. Code, § 1538.5)[1] and denial of his motion pursuant to section 995, defendant Ronnie Michael Fannon pled no contest to possession of a controlled substance (Health & Saf., § 11377, subd. (a)). The trial court granted him Proposition 36 probation. On appeal, he contends the trial court erred in denying his motion to suppress because the officer's search for his identification was unlawful and vitiated his subsequent consent to the search that led to discovery of the methamphetamine. We conditionally reverse and remand for further proceedings.

## FACTS

### I. *Evidence*

On May 5, 2014, at the hearing on the motion to suppress, Modesto Police Officer Taylor Aja testified that on December 3, 2013, at about 12:30 p.m., he was driving his patrol vehicle on routine patrol when he saw a car fail to stop at a stop sign. He followed the car and initiated a traffic stop. Defendant, who was the driver, pulled into the driveway of a residence and Officer Aja pulled up behind him. Defendant immediately stepped out of the car with one of his hands in his pocket. Officer Aja believed this behavior was unusual for a traffic stop and he took it as a "danger factor." Officer Aja asked defendant to take his hand out of his pocket and he complied. Officer Aja approached. He told defendant the reason for the traffic stop and asked for his identification. He also asked defendant if he was on either probation or parole. Defendant said he was not on either. Officer Aja "removed [defendant's] ID from his wallet, which [defendant] said was in his back pant pocket." Then Officer Aja asked defendant if he had anything illegal on his person. Defendant said he did not. Officer Aja asked if he could check him. Defendant said it was all right for him to do so. When Officer Aja searched him, he found a plastic baggie containing 0.51 grams of

---

[1] All statutory references are to the Penal Code unless otherwise noted.

2

methamphetamine, a useable amount. Officer Aja immediately placed defendant in handcuffs and arrested him.

After receiving *Miranda*[2] warnings, defendant responded to Officer Aja's questions, explaining that the substance was methamphetamine. Defendant had bought it for $20 about an hour earlier and had not used any of it yet. He said he had been using methamphetamine for about seven years and preferred snorting it. He used it once or twice a week. He agreed it was bad for his health.[3]

The defense played a video of defendant's traffic stop (exhibit A) taken from Officer Aja's body camera.[4] The video did not capture the entire traffic stop, and the audio began even later. At the start of the video, defendant was standing facing the driver's side of his car with his hands behind his back. Officer Aja was directly behind him, and defendant's wallet and keys were already on top of the car in front of him. As he stood behind defendant, Officer Aja searched in defendant's pockets and found a cell phone and a baggie containing methamphetamine, both of which Officer Aja set on top of the car. At this point, the video's audio began. Officer Aja told defendant they were not being honest with each other (apparently referring to defendant's unrecorded statement that he had nothing illegal on his person). Officer Aja then appears to have handcuffed defendant. Officer Aja asked defendant if he had anything else on him that Officer Aja needed to know about, specifically any needles he might be carrying. Defendant said, "No, I don't do that." Officer Aja asked defendant if he was on probation or parole, and he said he was not. Officer Aja searched defendant further, then took him to sit in the back of the patrol vehicle, which was parked in the driveway behind defendant's car with

---

**2**    *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

**3**    On cross-examination, defense counsel asked only whether defendant complied when Officer Aja asked him to remove his hand from his pocket, and whether the order of events to which Officer Aja had testified was accurate.

**4**    The video, which does not have a transcript, is part of the record on appeal.

3

its lights activated. After defendant sat down, Officer Aja asked him if there was anything in the car he needed to know about, including drugs. Defendant said there was not. Officer Aja asked if it was okay for him to check and defendant said, "Yeah, sure." Officer Aja approached the car to begin searching. At this point (after two minutes and 19 seconds), defense counsel stopped the video.

## II. *Argument and Ruling*

Defense counsel argued that the search of defendant's back pocket for his wallet was illegal because there existed neither reasonable suspicion he was armed and dangerous to support a *Terry*[5] patdown, nor probable cause to support a more invasive search for evidence. Counsel summarized: "So at that point this becomes an illegal search at the point when he goes in and goes into his person to get the wallet. That's one point." Counsel further argued that Officer Aja's testimony regarding the sequence of events did not match those in the video (referring specifically to Officer Aja's asking defendant if he was on probation or parole after he had already started searching him), and thus Officer Aja's credibility was undermined. Counsel argued it was "very murky at this point whether there was even any consent."

The prosecutor argued that defendant's consent to the search of his person and Officer Aja's discovery of the drugs both occurred before the video began. He argued there was no evidence disputing defendant's consent. The prosecutor did not mention the search for identification.

Defense counsel responded: "What we do know is that [defendant] is detained, there's a full search going on, and he's asked whether he's on probation or parole after the search is commenced. That's out of order from what Officer Aja testified, and it doesn't match up, and for those reasons, we would argue that both for the removal of the

---

**5**     *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*).

wallet and for the full search itself, that those are both bad searches, and, therefore, the evidence obtained from such should be suppressed."

At this point, the following occurred:

> "[PROSECUTOR]: If there's any further questions about the clarity of what happened that night or that day, People would simply request Officer Aja retake the stand to clarify. He's here with us.
>
> "THE COURT: He's rested.
>
> "[PROSECUTOR]: He's rested, but there is a way for—to reopen testimony.
>
> "[DEFENSE COUNSEL]: That's improper after Counsel's argued.
>
> "THE COURT: I think I've heard enough.
>
> "This is a problem with these body cameras, because they're—the quality is not always what it should be, and it is difficult to determine at what point it began to record. There was some period of time when there was no audio portion. I could see [defendant's] back, but I couldn't really tell what was going on or what was being said. Certainly the initial stop was a valid one, there was a traffic violation, and that's a valid reason to make the stop.
>
> "So the question is for the Court to decide whether we're dealing with a Terry situation where there was reasonable suspicion and the officer could have done a stop-and-frisk, which is usually what a Terry case is, just a pat-down, [defendant], it's not a full search, or whether there was a consent to search as argued by [the prosecutor].
>
> "In that regard, I did make a note of the officer's testimony that when he first contacted [defendant], [defendant] immediately stepped out of the vehicle, which he said was a little bit unusual in his experience, and he had his right hand in his pocket, which alerted him to a potential issue of danger. Frequently officers make further inquiry in order to preserve officer safety in those situations.
>
> "And so there would be two possible bases for which the Court could uphold the search. One would be officer safety, and the other would be that there was a consent.

"I can't tell from the video if, as argued by [defense counsel], if [defendant] was in fact detained. I couldn't see—I could see basically his shoulder area, but I couldn't tell if his arms were behind his back and he was in a—from the video if he was actually detained. There was nothing to indicate that he was not free to go. And I certainly understand the argument raised in the written points and authorities that frequently people in [defendant's] situation do not feel free to leave, and I understand that. However, it does appear that, based on Officer Aja's testimony, that [defendant] gave permission to search, and it was following that permission to search that the suspected methamphetamine was located.

"And so on that basis, the Court will deny the motion."

## DISCUSSION

### I.     *Law*

"[W]hen the basis of a motion to suppress is a warrantless search or seizure, the requisite specificity is generally satisfied, *in the first instance,* if defendants simply assert the absence of a warrant and make a prima facie showing to support that assertion. Of course, if defendants have a specific argument *other than the lack of a warrant* as to why a warrantless search or seizure was unreasonable, they must specify that argument as part of their motion to suppress and give the prosecution an opportunity to offer evidence on the point. [Citation.] For example, defendants who believe the police failed to comply with the knock-notice requirement of Penal Code section 844 cannot simply bring a motion to suppress alleging a warrantless search or seizure and then wait until the appeal to raise the knock-notice issue. Rather, defendants must specify the knock-notice issue in the course of the trial court proceeding. [Citations.]

"Moreover, once the prosecution has offered a justification for a warrantless search or seizure, defendants must present any arguments as to why that justification is inadequate. [Citation.] Otherwise, defendants would not meet their burden under section 1538.5 of specifying why the search or seizure without a warrant was 'unreasonable.' This specificity requirement does not place the burden of proof on defendants. [Citation.] As noted, the burden of raising an issue is distinct from the

6

burden of proof.  The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances.  [Citations.]  But, if defendants detect a critical gap in the prosecution's proof or a flaw in its legal analysis, they must object on that basis to admission of the evidence or risk forfeiting the issue on appeal.

"In sum, … defendants must specify the precise grounds for suppression of the evidence in question, and, where a warrantless search or seizure is the basis for the motion, this burden includes specifying the inadequacy of any justifications for the search or seizure.  In the interest of efficiency, however, defendants need not guess what justifications the prosecution will argue.  Instead, they can wait for the prosecution to present a justification.  Moreover, in specifying the inadequacy of the prosecution's justifications, defendants do not have to help the prosecution step-by-step to make its case.  The degree of specificity that is appropriate will depend on the legal issue the defendant is raising and the surrounding circumstances.  Defendants need only be specific enough to give the prosecution and the court reasonable notice.  Defendants cannot, however, lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*People v. Williams* (1999) 20 Cal.4th 119, 130-131 (*Williams*).)

The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures by law enforcement personnel.  A warrantless search or seizure is presumed to be unlawful.  (U.S. Const., 4th Amend.; *Mincey v. Arizona* (1978) 437 U.S. 385, 390.) "The prosecution always has the burden of justifying the search [or seizure] by proving [it] fell within a recognized exception to the warrant requirement." (*People v. Williams* (2006) 145 Cal.App.4th 756, 761.)  Consent is a well-established exception to the warrant requirement.  (*People v. James* (1977) 19 Cal.3d 99, 106 (*James*).)  "It has been long recognized that police officers, possessing neither reasonable suspicion nor probable cause, may nonetheless search an individual without a warrant so long as they first obtain the voluntary consent of the individual in question." (*United States v. Blake*

(11th Cir. 1989) 888 F.2d 795, 798; *People v. Jenkins* (2000) 22 Cal.4th 900, 971.) Consent is a question of fact to be determined in light of all of the circumstances and proved by a preponderance of the evidence. (*James, supra*, at p. 106 & fn. 4.)

"'[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.'" (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 222; *James, supra,* 19 Cal.3d at p. 106.) This additional "burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." (*Bumper v. North Carolina* (1968) 391 U.S. 543, 548-549.) The prosecution must show that "the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority." (*James, supra,* 19 Cal.3d at p. 106, fn. omitted.) Consent cannot be "the result of duress or coercion, express or implied." (*Schneckloth v. Bustamonte, supra,* at p. 248.)

"The rule is clearly established that consent induced by an illegal search or arrest is not voluntary, and that if the accused consents immediately following an illegal entry or search, his assent is not voluntary because it is inseparable from the unlawful conduct of the officers. (E.g., *People v. Lawler* (1973) 9 Cal.3d 156, 163-165 [(*Lawler*)]; *Kaplan v. Superior Court* (1971) 6 Cal.3d 150, 155; *People v. Johnson* (1968) 68 Cal.2d 629, 632-634; *People v. Haven* (1963) 59 Cal.2d 713, 719.) In *Lawler* this principle was applied to vitiate a consent which immediately followed an illegal pat-down search." (*Burrows v. Superior Court* (1974) 13 Cal.3d 238, 251 ["[P]etitioner's assent to the search of his car was the product of the unlawful search of his office; thus the trial court erred in failing to grant the motion to suppress the evidence taken from his car."].) The People "'have the burden of proving … that the consent was lawful … and was not inextricably bound up with unlawful conduct.'" (*Lawler, supra,* at p. 163.)

"Where there is substantial evidence supporting the conclusion that consent to search was given voluntarily, an implied finding to this effect implicit in the order

admitting the evidence pursuant to such consent, is binding on appeal. [Citations.] Where evidence on the issue of the voluntary nature of the consent conflicts, the finding of the lower court that the consent was voluntary … must be upheld." (*People v. Robinson* (1974) 41 Cal.App.3d 658, 668-669.)

Where, as here, a motion to suppress is submitted to the superior court on the preliminary hearing transcript, "the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness." (*People v. Thompson* (1990) 221 Cal.App.3d 923, 940.) We independently review the applicable law and its application to the facts (*People v. Carter* (2005) 36 Cal.4th 1114, 1140) and affirm the magistrate's ruling if correct under any legal theory (*People v. Zapien* (1993) 4 Cal.4th 929, 976). We review "issues relating to the suppression of evidence derived from governmental searches and seizures … under federal constitutional standards." (*People v. Troyer* (2011) 51 Cal.4th 599, 605.)

## II.     *Analysis*

### *A.*

Defendant contends Officer Aja's search of his pocket and wallet for identification violated his Fourth Amendment rights and vitiated his subsequent consent to the search of his person that resulted in discovery of the methamphetamine. He argues that not even a patdown search was justified, much less an invasive search of his pocket and wallet for identification. He explains that his subsequent consent to a further search of his person for anything illegal was not a product of his free will, but merely a submission to Officer Aja's assertion of authority.

9

The People counter that the facts do not support defendant's claim because "no evidence was presented or elicited on cross-examination that [Officer Aja] took the wallet from [defendant's] pocket,"[6] and thus defendant "has failed to show any unlawful conduct that would invalidate [his] consent to search his person for anything illegal." Citing *People v. Farrara* (1956) 46 Cal.2d 265 (*Farrara*), the People explain that "[defendant's] conviction cannot be reversed in the absence of evidence to support a conclusion that Officer Aja acted illegally in obtaining [defendant's] wallet."

We agree that the facts regarding Officer Aja's search for defendant's identification were undeveloped at the hearing—but it was not defendant's burden to develop them. In any event, the evidence did prove that Officer Aja removed defendant's identification from his wallet without a warrant and then obtained consent from defendant to conduct the subsequent warrantless search that produced the methamphetamine. After presentation of the evidence, defendant raised the issue of the warrantless prior search for identification, presenting an argument as to why the prosecution's consent justification for the subsequent search was inadequate. At this point, the prosecution should have been allowed to present further evidence to address defendant's issue because the prosecution continued to bear the burden of proving a justification for the subsequent warrantless search. (*Williams, supra,* 20 Cal.4th at pp. 130-131.) But the prosecution never got that chance because the magistrate refused to reopen to allow the prosecutor to elicit further testimony from Officer Aja.

Contrary to the People's suggestion, *Farrara, supra,* 46 Cal.2d 265 does not propose that a defendant bears any greater burden in making a motion to suppress than that described in *Williams*. In *Farrara*, the defendants contended on appeal that the

---

**6** We agree there was no direct evidence that Officer Aja removed the wallet from defendant's pocket, but we note that the prosecutor did not object or comment when defense counsel referred in argument to Officer Aja's search of defendant's pocket and removal of his wallet from his pocket.

10

evidence against them had been obtained through their illegal arrests and searches, and that the evidence should have been excluded at trial. But the defendants had not even raised the issue at trial by objecting to the evidence or by showing that the officers acted without a warrant.[7] (*Farrara, supra,* 46 Cal.2d at pp. 267-268.) The Supreme Court first noted that the trial occurred before the court's decision in *People v. Cahan* (1955) 44 Cal.2d 434, which held that "evidence obtained in violation of the constitutional guarantees is inadmissible." (*Id.* at p. 445.) Next, the court explained that no objection was made to the introduction of the allegedly inadmissible evidence at trial, and no evidence was presented to show that the officers acted lawfully or unlawfully—including no evidence to show whether or not the officers had warrants. The court reiterated its holding in *Badillo v. Superior Court* (1956) 46 Cal.2d 269: "'[T]he defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification.'" (*Farrara, supra,* at p. 268.) The court explained: "In the present case, on the contrary, there is no such evidence, and to reverse the judgment it would be necessary to presume that the officers acted illegally and that the trial court erred in admitting the evidence so obtained. It is settled, however, that error will not be presumed on appeal [citations], and in the absence of evidence to the contrary it must also be presumed that the officers regularly and lawfully performed their duties." (*Farrara, supra,* at pp. 268-269.)

Here, the evidence established that Officer Aja conducted both the search for identification (which may or may not have included removing defendant's wallet from his pocket) and the subsequent search for anything illegal without a warrant. *Farrara* is inapposite.

---

[7] A pretrial motion to suppress was not made. We note that section 1538.5 was enacted in 1967.

11

***B.***

Next, the People argue that even if Officer Aja did remove defendant's wallet from his pocket, the magistrate impliedly found defendant consented to the search for identification, and we are bound by that implied factual finding if supported by substantial evidence.

Assuming the magistrate impliedly found defendant voluntarily consented to the search for identification, we conclude such a finding was not supported by substantial evidence. The only evidence regarding defendant's possible consent to Officer Aja's search for his identification was that Officer Aja asked him for identification and defendant responded that his wallet was in his back pocket. Whether defendant's single statement in response to Officer Aja's request for identification constituted voluntary consent depended on the totality of the circumstances, and the prosecution bore the burden of proving those circumstances—which might have included, for example, other communications or gestures between Officer Aja and defendant, or circumstances describing the conditions of the detention at the time of that interaction.[8] In this case, we

---

[8]    See, for example, *United States v. Winston* (1st. Cir. 2006) 444 F.3d 115, 117 (after handcuffing defendant, agents asked him for identification; he told them it was in nightstand in his bedroom; agents could not find nightstand; defendant pointed to nightstand with his shoulder; agents opened drawer to find his wallet on top of cash; consent to search implied); *id.* at p. 121 ("While the agents did not explicitly ask for permission to open the drawer to retrieve [defendant's] identification, the circumstances described would reasonably lead the agents to conclude that [defendant] was consenting to the opening of the drawer in the nightstand to allow for the retrieval of his wallet and identification."); *id.* at p. 122 (routine and mundane nature of request for identification weighed heavily in favor of voluntariness; mundaneness of identification makes it unlikely that agents would bother to use coercive methods to obtain it); *United States v. Lewis* (7th Cir. 2010) 608 F.3d 996, 999-1000 (when asked for his identification, defendant immediately replied it was on a speaker in the bedroom; consent to enter bedroom implied because defendant specified that identification was located there in response to officer's question rather than saying "'Yes' or 'I don't have it with me' or 'I'll go get it,' which would not have implied consent to enter the bedroom"; "there was no evidence that [defendant] ever objected to the entry or that any coercion was used"; court was "troubled, however, by the fact that all these events happened so quickly and

12

cannot conclude defendant's single statement describing the wallet's location provided substantial evidence of his voluntary consent to Officer Aja's search of his wallet. That single fact, without the context of other circumstances, did not prove voluntary consent. Defendant thereafter properly raised the issue of the unlawful search for identification, but the magistrate foreclosed the prosecution's opportunity to prove voluntary consent or another justification for the warrantless search of the wallet. The issue was not fully litigated.[9]

### C.

The People also argue Officer Aja's limited search for defendant's identification, even if it included a search of both his pocket and his wallet, was permissible under *People v. Loudermilk* (1987) 195 Cal.App.3d 996 (*Loudermilk*). They maintain Officer

---

that the detectives never asked for clarification from [defendant] regarding his somewhat ambiguous response"); *State v. Aucoin* (La.Ct.App. 1992) 613 So.2d 206, 209-210 (officer's opening of defendant's wallet and removal of her license constituted an unreasonable search; reasonable and appropriate conduct would have been for the officers to return defendant's wallet to her and request that she remove her identification and give it to them); see also *United States v. Jaras* (5th Cir. 1996) 86 F.3d 383, 390 (consent to search suitcases not implied from defendant's silence or failure to object because officer did not expressly or implicitly ask for his consent to search).

[9]     In our opinion, the magistrate's finding that defendant was not detained was also not supported by substantial evidence. The magistrate stated she could not discern from the video whether defendant was detained and whether his arms were behind his back. We believe the video clearly shows that defendant's arms were behind his back, that Officer Aja was standing directly behind him, and that Officer Aja's patrol vehicle with lights activated was blocking defendant's car in the driveway. Accordingly, we conclude the magistrate's finding that "[t]here was nothing to indicate that [defendant] was not free to go" was not supported by substantial evidence. The video demonstrates that defendant was detained and not free to leave. We also note that ordinary traffic stops are investigatory detentions. (*People v. Suff* (2014) 58 Cal.4th 1013, 1054; *Brendlin v. California* (2007) 551 U.S. 249, 255 ["The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.'"].)

13

Aja was simply responding to defendant's verbal direction to the wallet's location in his pocket and Officer Aja's removing it was reasonable.

*Loudermilk* and other cases like it, however, have upheld a warrantless search for identification where the defendant made an attempt to frustrate the officer's efforts to identify him by refusing to identify himself, claiming not to possess identification, or providing a false or suspicious identification. In *Loudermilk*, officers stopped a hitchhiking defendant who matched the description of a person suspected of committing a firearm assault. The officers asked the defendant to produce identification and the defendant responded that he did not have any. One of the officers then performed a patdown search for weapons and felt what appeared to be a wallet in the defendant's rear pocket. The officer reached in, removed the wallet, opened it, and began searching for identification. (*Loudermilk, supra,* 195 Cal.App.3d at p. 1000.) Noting that the right to inquire into a suspect's identity is necessary for an effective investigatory detention, the court stated: "To require defendant … to display his driver's license or other proof of identification is a minor intrusion which is strictly limited to the sole justification of the detention." (*Id.* at p. 1002; see *Terry, supra,* 392 U.S. at p. 29.) "[T]he *Terry* suspect may not lie to the officer with impunity about his identity if there is a quick and minimally intrusive method of resolving the doubt." (*Loudermilk, supra,* at p. 1002.) The court concluded that the seizure of the defendant's wallet was reasonably related to the purpose and scope of the investigative detention and that "the officer was not conducting a general 'fishing expedition' for whatever evidence he could find, but [merely seeking to ascertain] the defendant's identity." (*Ibid.*) Where the defendant "lied to the officer and himself created the confusion as to his own identity[,] [t]he seizure of [his] wallet was minimal and strictly limited to the legitimate inquiry into his identity." (*Id.* at p. 1004.)

The *Loudermilk* court also observed: "We must emphasize that we do *not* hold that a suspect may be detained and searched merely because he either refused to identify

14

himself or refused to produce proof of identification.  Nor do we hold that each time an officer conducts a *Terry* stop he may immediately conduct a search for identification.  The rule we announce does not provide officers with unfettered discretion and does not open citizens to harassment.  Our decision, allowing the officer to seize the wallet, is limited *to the unique facts of this case*, where defendant lied to the officer and himself created the confusion as to his own identity.  The seizure of defendant's wallet was minimal and strictly limited to the legitimate inquiry into his identity.  We conclude that the seizure of defendant's wallet was reasonable within the meaning of the Fourth Amendment." (*Loudermilk, supra,* at p. 1004, second italics added; see *People v. Long* (1987) 189 Cal.App.3d 77, 81-82 [defendant stated his name but denied having any identification on him; officer noticed a wallet-sized bulge in his rear pants pocket; officer directed defendant to look through his wallet; defendant removed wallet and made evasive movement; defendant thumbed through wallet and said nothing in the wallet would identify him; officer asked defendant to hand over the wallet, in which he found identification and methamphetamine]; *id.* at p. 88 ["defendant's oral statement of his name was suspect when he insisted he had no identification while appearing to carry a wallet and, in addition, he seemed intoxicated"; officer's intrusion was minimal]; *State v. Flynn* (1979) 92 Wis.2d 427, 447-448 [defendant not only refused to identify himself but became increasingly belligerent; he used obscenities and persisted in refusing; officer removed wallet and searched for identification].)

Here, there was no evidence defendant attempted to frustrate Officer Aja's effort to identify him or was uncooperative in any way.  Indeed, the video suggests defendant was generally cooperative, at least during the events captured on the video.[10]  As a result, *Loudermilk* is also inapposite.[11]

---

[10]    The video did not capture the events surrounding the search for identification.

[11]    We note that defendant correctly points out that a warrantless search for identification is not justifiable as part of a *Terry* patsearch.  (*People v. Garcia* (2006)

15

*D.*

In summary, we conclude defendant raised the issue of the prior warrantless search for identification as an inadequacy in the prosecution's consent justification for the subsequent search that produced the methamphetamine. The prosecution retained the burden to prove a justification. Because the evidence did not support an implied finding that the search for identification was lawful, and because the magistrate prevented the prosecution's presentation of further evidence to carry its burden, the issue was not fully litigated below. We will remand the matter for a full hearing on the issue of the lawfulness of the search for identification and, if found to be unlawful, its effect on defendant's subsequent consent to the search that produced the methamphetamine. (See § 1260 [appellate courts "may … remand the cause to the trial court for such further proceedings as may be just under the circumstances"].)[12]

## DISPOSITION

The judgment is conditionally reversed and remanded to the trial court with directions to reopen the hearing on the motion to suppress for the reasons expressed in this opinion. If the court concludes the suppression motion was properly denied, the judgment should be reinstated. If not, the court should grant the suppression motion and allow defendant to withdraw his no contest plea.

---

145 Cal.App.4th 782, 788 (*Garcia*) [*Terry* does not justify a patdown search for ordinary evidence, including identification; "[t]here is no legal justification for a patdown search for identification"].)

[12] We do not reach the prosecution's claim that any taint from an unlawful prior search was attenuated.

16